**Charles BAPP, Plaintiff-Appellee,**

v.

**Otis R. BOWEN, Secretary Health and Human Services, Defendant-Appellant.**

**No. 1477, Docket 86–6084.**

United States Court of Appeals,
Second Circuit.

Argued June 24, 1986.

Decided Sept. 25, 1986.

Christopher B. Baril, Asst. U.S. Atty., Dist. of Vermont, Rutland, Vt. (George W.F. Cook, U.S. Atty., Rutland, Vt., of counsel), for defendant-appellant.

Vincent Illuzzi, Orleans, Vt., submitted a brief for plaintiff-appellee.

Before MANSFIELD, NEWMAN and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

The question before us on this appeal is whether the Secretary of Health and Human Services (Secretary) must produce a vocational expert to testify as to a disability claimant's alternative vocational capacity whenever the claimant presents proof that he suffers from a nonexertional impairment in addition to his exertional impairment. The United States District Court for the District of Vermont (Billings, J.) held on February 18, 1986 that the testimony of a vocational expert was always required in these circumstances. The Secretary appeals.

 We do not adopt the district court's fixed rule. Instead, we believe that the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

Because the record does not adequately explain or determine the extent to which Bapp's nonexertional impairment would further diminish his capacity to perform "light work", the category into which the claimant would otherwise have been placed, see 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00 (1986), we remand this case to the Secretary to make that determination, consistent with the standards we now set forth.

I

On September 15, 1983 claimant Charles Bapp filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433 (1982), and for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383 (1982). He alleged an inability to work dating back to November 13, 1982 due to coronary artery disease, chest pains, a hiatal hernia, chronic fainting and blackouts, poor circulation, and arthritis of the spine.

The application for disability benefits was denied initially and again upon reconsideration. An Administrative Law Judge (ALJ) considered the case de novo, and on July 18, 1984 found Bapp "not disabled" within the meaning of the Social Security Act. Bapp, who was then 49 years old with a seventh-grade education, had previously worked as a furniture set-up operator which required some heavy lifting. It is undisputed that he cannot resume this employment. After hearing medical testimony the ALJ found that the evidence established that claimant had severe coronary artery disease (an exertional impairment). Taken alone, this exertional impairment would restrict claimant to "light work". The ALJ did not wholly credit Bapp's additional allegations of blackouts and coughing spells (nonexertional impairments) and found that "claimant's capacity for the full range of light work has not been significantly compromised by his additional nonexertional limitations." The ALJ concluded therefore that under the applicable medical vocational guidelines, 20 C.F.R. § 404.1569 (1986) et seq., Bapp was not disabled. Nonetheless, the ALJ gave enough credence to claimant's claims of blackouts to state that he should not work at heights or around dangerous machinery:

The claimant and his wife have recently testified as to the occurrence and the

frequency of his blackout spells; however, again it is noted that the objective medical evidence cannot demonstrate a physical impairment which could reasonably be expected to cause such symptoms. It is felt by the undersigned that the claimant's diagnosis of tussive syncope is difficult to objectively establish and although the claimant should avoid working around dangerous machinery and heights because of the possibility to [sic] being injured, there would not be sufficient restriction in his residual functional capacity so as to prevent him from performing any substantial gainful activity.

The district court reversed holding that whenever a nonexertional impairment is presented the Secretary must introduce a vocational expert to testify that jobs in the workplace exist for a person with that particular disability. Rather than remanding to allow the Secretary an opportunity to introduce such an expert, the district court believed that since the Secretary lacked good cause for not producing its expert earlier, it had lost that opportunity. As a consequence, the case was remanded by the district court to the ALJ merely for the calculation of claimant's benefits.

## II

Because the question of whether expert testimony is necessary presents a question of law, we examine the district court's determination in light of the pertinent regulations and decisions. The Secretary has promulgated a five-step sequence for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (1986). Because Bapp is not currently engaged in substantial gainful activity, has a severe impairment that significantly limits his physical or mental ability to perform work, and cannot perform past relevant work, his impaired condition satisfies the majority of these steps. Only the fifth step is disputed— whether there is other work that claimant could perform. *See Berry v. Scheiker,* 675 F.2d 464, 467 (2nd Cir.1982).

■ Once a disability claimant proves that his severe impairment prevents him from performing his past work, the Secretary then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy. *Id. See also Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). In the ordinary case the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986).

Here, if claimant only suffered from exertional impairments, the grids would require a conclusion that he was not disabled based upon his age, education and prior work experience. According to the grids, Bapp would then have the residual functional capacity to perform "light work". But if a claimant suffers from additional "nonexertional" impairments, the grid rules may not be controlling. Section 200.-00(e)(2) provides:

[W]here an individual has an impairment or combination of impairments resulting in *both strength limitations and nonexertional limitations,* the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience *provide a framework for consideration of how much the individual's work capability is further diminished* in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full *consideration must* be given to all of *the relevant facts in the case* in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2)(1986) (emphasis added).

Similarly, § 200.00(a), Introduction to the Guidelines, provides that "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." *Id.* at § 200.00(a). Consequently, the language of these sections indicates that in a case where both exertional and nonexertional limitations are present, the guidelines cannot provide the exclusive framework for making a disability determination.

The district court relying on *Brassard v. Heckler*, 646 F.Supp. 1152 (D.Vt.1985), went a step beyond the suggestion in §§ 200.00(a) and 200.00(e)(2) that the grids may sometimes be inappropriate where nonexertional impairments are demonstrated, and concluded instead that resort to the grids is *always* inappropriate in such a case. As noted, the district court then held that the Secretary must introduce a vocational expert to testify as to the claimant's alternate vocational capacity.

Other courts have taken a less rigid approach. In *Channel v. Heckler*, 747 F.2d 577 (10th Cir.1984) (per curiam), the court indicated that it would not hesitate to overturn an ALJ's finding of "not disabled" when the grids have been applied *conclusively* without sufficiently considering the claimant's nonexertional impairments. *Id.* at 581. *Accord Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983). But *Channel* did not hold that the Secretary must in all cases produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs that exist in the national economy. Rather, it remanded for the Secretary to consider whether the claimant's nonexertional impairments were significant enough to limit his ability to perform the full range of jobs requiring sedentary work capability. If the range of jobs is limited by claimant's nonexertional condition, then resort to the grids cannot be had, and the Secretary must give full consideration to all the relevant facts, in-

cluding expert vocational testimony, *if necessary. Id.* at 582–83 (emphasis added). *See also Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985) ("Where, as here, the ALJ properly determines that the claimant's nonexertional impairments do not prevent the claimant from performing the full range of work contemplated by the Guidelines, the ALJ may rely on the Guidelines in directing a determination of 'not disabled' without resort to vocational expert testimony or other similar evidence to establish the claimant's ability to perform work in the national economy."); *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984) (per curiam) (ALJ properly applied the grids when claimant's nonexertional impairment did not affect his residual functional capacity to perform sedentary work); *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir.1983) (per curiam) (reliance on grids approved where substantial evidence supported ALJ's finding that plaintiff's nonexertional impairments "did not significantly limit the range of work permitted by his exertional limitations"); *Hernandez v. Heckler*, 704 F.2d 857, 863 (5th Cir.1983) (when evidence supports ALJ's finding that plaintiff's nonexertional impairments do not "further diminish" his ability to perform sedentary work, the guidelines were properly applied).

### III

In light of the above discussion, we hold that application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis. If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments. *Blacknall*, 721 F.2d at 1181. Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his

exertional impairment the application of the grids is inappropriate. By the use of the phrase "significantly diminish" we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.[1]

■ Although we note the ALJ found that Bapp's nonexertional impairments did not "significantly diminish" the full range of light work that he could perform, we believe that he did so in the context of the ultimate question, *i.e.* was Bapp disabled. The ALJ failed to consider the intermediate question—whether the range of work Bapp could perform was so significantly diminished as to require the introduction of vocational testimony. Upon remand the ALJ must reevaluate whether the Secretary has shown that plaintiff's capability to perform the full range of light work was not significantly diminished by his coughing and blackout spells. That initial determination can be made without resort to a vocational expert. If nonexertional limitations significantly diminish Bapp's ability to perform the full range of "light work", then the ALJ should require the Secretary to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations.

## IV

The order is reversed with a direction to the district court to remand to the Administrative Law Judge for further proceedings in accordance with this opinion.

1. The report accompanying the promulgation of the grids indicates that negligible reductions in work capacity caused by nonexertional impairments will not invalidate the presumptions created by the grids:

> Where a person has nonexertional (or additional exertional) limitations, the ranges of work he or she can perform (sedentary to very heavy) are diminished by exclusion of the particular occupations or kinds of work within those ranges that entail use of the abilities which the person has lost. In some cases, the exclusion will have a negligible effect, still leaving a wide range of work capa-

bility within the functional level; while in others the range of possible work may become so narrowed that the claimant does not have a meaningful employment opportunity. 43 Fed.Reg. 55,349, 55,358 (1978).

The report also makes clear that an individual need not be able to perform each and every job in a given range of work. *See* 43 Fed.Reg. at 55,361 (1978) ("unless the individual possesses physical capacities equal to the strength requirements for most of the jobs in that range, he or she cannot be classified as able to do the pertinent range of work.").