818 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Herman PURYEAR, Plaintiff-Appellant,
v.
SECRETARY, HEALTH AND HUMAN SERVICES, Defendant-Appellee
 No. 86-1445.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1987.
 
 Before MARTIN and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Herman Puryear appeals the district court's decision affirming the Secretary's denial of Social Security disability benefits. The district court had initially remanded the case for further hearing to include vocational expert testimony concerning Puryear's age, education, and transferable skills, in order to properly apply the medical-vocational guidelines. Upon consideration of the record as a whole we conclude that the decision of the administrative law judge was not based on substantial evidence and we therefore reverse and remand for an award of benefits.
 
 I.
 
 2
 Herman Puryear filed his application for benefits on December 28, 1981, alleging disability since May 5, 1981, due to problems with his back which increased after surgery. His application was denied both initially and on reconsideration. A hearing was held on August 31, 1982, and the administrative law judge upheld the denial as did the Appeals Council by form letter on January 14, 1983. Puryear then filed a complaint in the district court which on December 30, 1983, remanded the case to the Secretary to obtain vocational expert testimony. In his report and recommendation the magistrate stated that a vocational expert was needed in order to ascertain whether Puryear's trade school education provided for direct entry into skilled work. Such a finding would determine whether Rule 201.13 or Rule 201.14 would apply. Rule 201.13 would result in a finding of "not disabled" whereas Rule 201.14 would result in a "disabled" finding.
 
 II.
 
 3
 Puryear was born on December 6, 1932, and was almost 50 years old at the time of his first hearing. He finished high school by attending adult education courses, and through a trade school apprenticeship program he became a licensed journeyman electrician in 1969. Before receiving his electrician's license Puryear worked for seventeen years as a truck repair assistant for Chrysler.
 
 
 4
 Though the record reveals that Puryear suffers from congenital scoliosis, his back pain first became severe in May of 1981 and he scheduled an appointment for evaluation at Detroit Medical Center on May 27, 1981. He complained of low back, pain radiating down his left leg and a myelogram revealed levoscoliosis to the left and compression of the L3 and L4 vertebrae as well as spinal stenosis at L4-5 and L5-1. An EMG showed some evidence of denervation of the L3 and the L5-Sl area.
 
 
 5
 On June 10, 1981, Dr. Donald Austin performed a lower lumbar decompression laminectomy for Puryear's spinal stenosis. Puryear did well post-operatively though Dr. Austin noted that the prognosis for ultimate pain relief was guarded. During the operation Dr. Austin removed enlarged bony elements and calcium.
 
 
 6
 After surgery, Puryear was referred to Dr. Harry Ingberg for evaluation and physical therapy. Puryear saw Ingberg from September 14, 1981, through December 2, 1981. During that time Puryear's strength and side-to-side flexibility increased though his back motion changed very little. Ingberg noted that his forward motion and hyperextension were still only fifty percent of normal. He also reported that Puryear continued to have pain in his left leg which was not remedied by transcutaneous electric nerve stimulation therapy. Throughout, Ingberg continued to report deficient reflexes in Puryear's right knee and ankle and left hamstring which he classified as neurologic disorders. Dr. Ingberg also noted periodic numbness in Puryear's left leg and its tendency to buckle. On December 2, stating that he could do nothing further to reduce Puryear's disability, Dr. Ingberg discontinued treatment.
 
 
 7
 Between December 17, 1981, and April 13, 1982, Puryear was evaluated by three doctors in addition to Ingberg and Austin. All of these doctors indicated that his motion was extremely limited and that at the present time he was unable to work. Some speculated that he may be suffering from muscle spasm and most noted his pain and tenderness in the lumbar area. Dr. McCollough indicated that Puryear's condition was permanent and could not be expected to improve and that he could not engage in activities requiring significant bending, lifting, pushing, pulling, standing and walking. He also noted Puryear was limited in his ability to remain in one position for long periods. While both doctors Yurkanin and Horvath believed that Puryear's condition should improve with time, no doctor has given any indication that it has. In fact on January 21, 1984, Dr. Harris, Puryear's treating physician, indicated that his condition had not improved since the laminectomy and that he continued to suffer back pain with radiation down the left leg. He found that Puryear was disabled.
 
 
 8
 At his first administrative hearing on August 31, 1982, Puryear stated that he was unable to lift ten pounds, could not stoop, and had difficulty climbing stairs. He said he could walk about a block and occasionally attempted to vacuum or mow the lawn but that it was so painful he had to take many breaks to lie down. The administrative law judge at the first hearing found that as of December 17, 1981, Puryear had regained the ability to perform a fun range of sedentary work and that Puryear's allegations of pain were self-serving. Thus he found that Puryear's impairment did not remain severe for 12 consecutive months and denied benefits.
 
 
 9
 After the second hearing where some vocational expert testimony was produced, the second administrative law judge concluded that Puryear's skills were transferable to a semi-skilled level of sedentary work and that he could perform a full range of sedentary work. He noted that although Puryear claimed to suffer severe pain it was not substantiated by the medical records and that he did not appear to have any problem sitting during the 45 minutes the hearing lasted.
 
 
 10
 Puryear makes three arguments on appeal. First he argues that the Secretary's finding that his impairment did not meet or equal the listing of Appendix 1, Part 1.05c was not based on substantial evidence. Second he argues that the Secretary failed to consider his nonexertional impairments of pain and lack of concentration and thus improperly applied the grid in evaluating his disability. Finally, he argues that there was not substantial evidence to support the testimony of the vocational expert that there are skilled or semi-skilled jobs at the sedentary level which Puryear could perform and that the record does not support the administrative law judge's finding that plaintiff could perform a full range of sedentary work. As always, our standard of review is: was the Secretary's decision supported by substantial evidence in the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).
 
 A. Meeting the Listing
 The listing at 1.05c of Appendix 1 reads:
 
 11
 Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least three months despite prescribed therapy and expected to last twelve months. With both 1 and 2:
 
 
 12
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 13
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 14
 It is indisputable that Puryear suffers from spinal stenosis. Thus, the administrative law judge had to determine whether the other elements of the listing lasted for the required amount of time. It is agreed by all doctors that Puryear suffers severe back and leg pain, limitation of motion and reflex loss. However, the evidence of muscle spasm is contradictory as is that of his motor loss. He does not appear to suffer muscle -weakness. Because it is not our role to resolve conflicts in the evidence or try the case de novo we must conclude that the Secretary's decision that Puryear failed to meet the listing was based upon substantial evidence. See, e.g., Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).
 
 
 15
 B. Pain as a disability.
 
 
 16
 Though subjective allegations of pain may not be the sole basis for a finding of disability, when objective medical evidence indicates that a medical condition is of such severity that it can reasonably be expected to produce disabling pain, pain may constitute a disability in and of itself. Duncan v. Secretary of Health and Human, Services, 801 F.2d 847, 853 (6th Cir. 1986). Here there is overwhelming evidence of an underlying medical condition which would support Puryear's allegations of pain. His doctors have unanimously agreed that he suffers from pain. The question under the second part of the Duncan test is whether that pain is severe enough to be disabling. Once again there is conflict among the doctors. Dr. Ingberg indicated that Puryear was relatively asymptomatic when sitting and that he only needed to lie down occasionally to bring his discomfort under control. Dr. Horvath noted that Puryear did not always require pain medication. However, Dr. McCollough indicated that his daily activities were restricted by pain. In addition, Puryear was hospitalized most recently from August 22, 1983, to September 24, 1983, due to his chronic back pain. While he was in the hospital, Dr. Elmagrabi noted that he required various general and local nerve blocks to relieve his spasms and improve his flexibility. He was also given epidural blocks and Parafon Forte for pain.
 
 
 17
 All of this evidence appears to contradict the administrative law judge's conclusion, and "substantiality of the evidence must be based upon the record taken as a whole" and " 'must take into account whatever in the record fairly detracts from its weight." ' Garner, 745 F.2d 383, 388 (quoting Beavers v. Secretary of Health, Education and Welfare 577 F.2d 383, 387 (6th Cir. 1978)). It appears here that the administrative law judge did not consider the record as a whole. Rather he appears to have relied too heavily on the "sit and squirm" test which, standing alone, is an insufficient basis to discredit allegations of pain based on uncontroverted evidence in the record. See, e.g., Harris v. Heckler, 756 F.2d 431, 436 (6th Cir. 1985). Upon this record Puryear has adequately established disability based upon pain.
 
 
 18
 C. Pain as a nonexertional impairment.
 
 
 19
 While we find that Puryear's pain constituted a disability in and of itself, it is clear that it also may constitute a nonexertional impairment, see, e.g., Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985); Teter v. Heckler, 775 F.2d 1104, 1105 (10th Cir. 1985), which precludes reliance on the grid for a determination of disability unless the nonexertional impairment does not significantly limit the claimant's ability to perform a full range of work at the designated level. See Bapp v. Bowen 802 F.2d 601, 605 (2d Cir. 1986); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 528-29 (6th Cir. 1981). We now conclude that Puryear was significantly limited in his ability to perform a wide range of work at the sedentary ,,level and that reliance on the grid was in error. While the grid may operate as a guideline there must be vocational expert testimony to establish there are jobs in the national economy which the claimant can perform. Kirk, 667 F.2d 524, 528-29.
 
 
 20
 Normally an administrative law judge's improper reliance on the grid would can for a remand for vocational expert testimony. However, here the vocational expert has already testified on the limited question of the transferability of the claimant's skills to skilled and semi-skilled sedentary work. When given this opportunity, the vocational expert testified as to a number of occupations he believed Puryear could perform; however, the jobs he listed such as a wire worker, coil tester, and spark plug assembler are all classified in the dictionary of occupational titles as work and not as sedentary work. Thus, they are indisputably not jobs which Puryear could perform. This fact provides further support for the conclusion that the Secretary's reliance on the grid was improper.
 
 IV.
 
 21
 For all of the foregoing reasons we believe that the decision of the Secretary was not based on substantial evidence and we therefore reverse and remand the case for an award of benefits.