Marylene **THOMPSON**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

No. CIV–87–1270C.

United States District Court, W.D. New York.

Sept. 6, 1989.

Neighborhood Legal Services, Inc., Buffalo, N.Y. for plaintiff (Olney H. Clowe, of counsel).

Dennis C. Vacco, U.S. Atty., Buffalo, N.Y. for defendant (Marc S. Gromis, Asst. U.S. Atty., of counsel).

## BACKGROUND

CURTIN, District Judge.

Plaintiff Marylene Thompson brought this action under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) ("Act"), challenging the final determination of the Secretary of Health and Human Services ("Secretary") that she is not eligible for either Supplemental Security Income ("SSI") benefits or disability insurance benefits. Currently pending before the court are the Secretary's motion for remand and the plaintiff's motion for summary judgment.

## FACTS

At the time of her administrative hearing on December 8, 1986, the plaintiff, who is 5'3" tall, was fifty-five years old and weighed approximately 170 pounds. She is claiming that she became disabled as of October 26, 1985, the date on which she retired from her job at Erie County Medical Center ("ECMC") in Buffalo, New York. The plaintiff, who has a ninth-grade education, testified that she had worked at the hospital for sixteen years.[1] For the last six years at ECMC, the plaintiff worked as a launderer. The job required constantly lifting and carrying thirty-five to forty pounds of linen, but when the plaintiff began experiencing pain in her shoulder she was allowed to do lighter work that involved carrying twenty-five to thirty pounds of linen. Transcript ("T") at 35–38, 51–56, 58. The record includes a letter from the plaintiff's former supervisor at the laundry corroborating that the plaintiff was assigned to less strenuous jobs due to her arm and back pain. T at 213. She apparently passed out several times while working in the laundry, but it appears that that problem was related to a cardiovascular ailment for which she had been treated. T at 56. She testified that she was no longer able to perform her previous work as a launderer at the hospital. T at 54–55. Before working in the hospital laundry, the plaintiff had worked as a nurse's aide at ECMC for ten years, but she testified that she had to switch jobs within the hospital because she had begun to experience shoulder pain. T at 56–57, 59. Prior to working at ECMC, she also had worked as a nurse's aide at

---

1. The plaintiff's vocational report indicates that she worked only six years at ECMC, Transcript ("T") at 115, but the Secretary does not challenge the plaintiff's testimony on this point.

Children's Hospital in Buffalo for ten years. T at 37, 60–61, 115.

The plaintiff testified that she stopped working because of pain caused by muscle spasms in her neck and shoulder that had troubled her for two to three years. T at 38–39, 43. *See also* T at 179, 182, 193. She stated that after two to three hours her muscles would tighten to the point that she was unable to perform her job, and she described the pain as constant. T at 38, 40–41, 43. She took various medications to help her work, although at the time of the hearing she was using only a nonprescription pain killer. T at 40–42. She testified that she had not had a severe muscle spasm since retiring because she does not engage in any activities that would induce them, T at 46, but that she sometimes was awakened by pain in her neck. T at 49.

The plaintiff testified that she was living with her daughter and two grandsons. She stated that she was able to care for herself and that she did the household cooking. She also was able to wash dishes and to sew, and she helped with the laundry and shopping. T at 46–50, 62–63. She testified that she also did some ironing for her family but that she would develop shoulder pain if she tried to press more than "three or four" pairs of pants and "a couple" of shirts. T at 47. She testified that she did not do household chores such as vacuuming, mopping, and sweeping because they aggravated her shoulders. T at 62. She was able to use public transportation. T at 48.[2]

The plaintiff testified that she could lift "maybe 10 pounds" and carry from five to ten pounds, but that lifting and reaching caused her pain. She stated that "a couple of hours" of sitting or standing would cause her pain, and that she had difficulty bending. T at 49–50, 64–65.

The plaintiff's treating physician, Dr. Douglas Roberts, began examining the plaintiff in September, 1982. T at 185. Dr. Roberts, a specialist in cardiovascular diseases and internal medicine, T at 187,

indicated in a letter dated July 24, 1986, that the plaintiff suffered from

> a cervical neuropathy which has caused considerable pain in the arm and *prevented her from working.* She has cervical spondylosis on x-ray which involves the joints C5 and 6 as well as C7. The patient has an osteophyte at the level with enroachment [sic] on the right and left interventricular foramina.

T at 203 (emphasis added). In a report dated November 16, 1986, Dr. Roberts noted that the plaintiff's ability to push and to pull was affected by her condition, and that she could lift and carry up to only five pounds. T at 210–11.

The plaintiff was also examined by Dr. Reza Samie, who, in a letter dated January 6, 1984, noted that the plaintiff had been suffering "pain and discomfort in the right side of her neck, as well as the whole right upper extremity," and that her condition had gradually worsened. As were those of Dr. Roberts, his findings were "consistent with C5–6 cervical radiculopathy, likely due to cervical spondylosis. Review of her cervical spine x-ray showed osteophyte formation involving the body of C5–6, C6–C7, which could explain her symptoms." T at 190. Dr. Samie advised the plaintiff to use a cervical collar as much as possible, to avoid heavy lifting, and to apply heat and massage. He also prescribed a pain killer. His letter indicates that the plaintiff also was suffering from "some peripheral neuropathy." T at 191. In a report dated May 8, 1986, Dr. Samie again indicated that the plaintiff suffered from cervical radiculopathy. T at 188.

The plaintiff was examined once by Dr. Kailash Lall. In a letter to Dr. Roberts dated April 21, 1986, Dr. Lall related that he did not find any evidence of cervical radiculopathy. He also stated: "I do not feel that [the plaintiff] would be a good candidate for disability. I explained this to her and she seemed to understand." T at 183. According to the plaintiff's testimony, however, her examination by Dr. Lall

---

**2.** The plaintiff testified that she no longer drives a car, apparently because of the heart problem for which she had been treated. T at 48, 63.

That ailment is not alleged as a basis for her disability claim.

lasted no more than fifteen minutes, and did not include the taking of any x-rays. T at 65. Furthermore, x-rays taken on December 2, 1986—less than a week before the hearing—confirmed that the plaintiff suffered from cervical spondylosis. The x-rays also indicated a congenitally small spinal canal. T at 212, 220.

A consultative examination was performed by Dr. Elmer Friedland. In a report dated May 30, 1986, Dr. Friedland observed that the plaintiff had an "average normal range of motions of the back and of all extremities," and that there were no objective findings regarding her neck and shoulder pain other than "mild tenderness of both trapezius muscles." T at 196. He also found that her neck motions were "good in all directions." *Id.* He concluded that there were "no signs of cervical disc disease, cervical rib, thoracic outlet syndrome, or radiculopathy." T at 195. *See also* T at 196. Dr. Friedland concluded that the plaintiff could perform "sustained activities of a moderate nature," and that her prognosis was "reasonably good." T at 196.

Consultative examinations of the plaintiff were also performed in connection with her unsuccessful attempt to obtain benefits through a New York State disability program. She was examined in September, 1984, and October, 1985, by Dr. Robert Kohn, and each time Dr. Kohn concluded that the plaintiff was not permanently disabled. T at 171, 174. After the first examination, however, Dr. Kohn noted that the plaintiff exhibited symptoms of cervical arthritis and stated: "I am not an expert in arthritis, and you may want another evaluation for her chief complaints." T at 171–72. The plaintiff was examined once by Dr. Nelson Torre in November, 1985, and he also examined the record provided by Dr. Samie. Dr. Torre concluded that, although the plaintiff "has cervical strain symptoms and can have underlying cervical osteoarthritis," she was not disabled. T at 180.

In a decision dated March 30, 1987, Administrative Law Judge ("ALJ") Margaret Quinn, although explicitly stating that she found the plaintiff to be a credible witness, T at 16, concluded that the plaintiff had the residual functional capacity to perform work-related activities other than work involving heavy lifting and carrying. The ALJ stated that the plaintiff "could be on her feet for a sustained period of time ... and lift and carry weights of up to 20 to 25 pounds." T at 16. Consequently, she concluded, the plaintiff could perform her past relevant work as a launderer. *Id.*

## DISCUSSION

The Secretary acknowledges not only that the ALJ failed to indicate clearly the basis for her determination that the plaintiff retained the ability to perform medium work, but also that the medical assessments in the record do not support that determination. The Secretary concedes that the ALJ thus did not apply the correct legal standards in the present case. The Secretary argues, nonetheless, that reversal is not warranted because the record is "replete" with evidence indicating that the plaintiff is not disabled. Item 9 at 8–12. Instead, according to the Secretary, remand is necessary to enable the ALJ "to obtain complete medical evidence and to make findings sufficiently clear to allow effective review by the court." *Id.* at 12.

The Act provides that the court, "on motion of the Secretary made for good cause shown before he files an answer," may remand a case for further action by the Secretary. The Act also empowers the court to order, at any time, that additional evidence be taken "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record...." 42 U.S.C.A. § 405(g) (1983).

In the present case, the Secretary did not seek remand before filing his answer.[3] Contrary to the claim made by the Secretary at oral argument, the statute's pre-fil-

---

**3.** The Secretary filed his answer on December 10, 1987; he filed a notice of motion for remand on September 13, 1988, although his brief in support of his motion was filed on June 13, 1988.

ing requirement is not merely a "technical" rule. Rather, it is a clear and concrete condition that the Secretary has failed to meet.

■ The Secretary also has failed to demonstrate good cause for his failure to have incorporated below the type of evidence he now wishes to obtain. Moreover, despite the fact that over two years have passed since the concededly flawed analysis by the ALJ, the Secretary has not even indicated the type of new and, supposedly, material evidence that he wishes to incorporate in the record. Furthermore, the record does not reveal, and the Secretary has not suggested, any reason for the ALJ's failure to call any physician or vocational expert as a witness. *See Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 644 (2d Cir.1983). The Secretary has thus failed to establish adequate grounds for remanding the case under either of the standards contained in § 405(g).[4]

■ Contrary to the Secretary's claim, moreover, the record does not contain substantial evidence contradicting Dr. Robert's opinion concerning the plaintiff's residual functioning capacity—specifically, that the plaintiff could lift and carry up to only five pounds. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In support of his argument, the Secretary refers to the consultative examinations performed by Drs. Friedland, Kohn, and Torre as constituting such substantial evidence. But there are several compelling reasons why the diagnoses based on these examinations are entitled to only limited weight at best.

First, the conclusions of these three consultative examiners were based on but brief and relatively limited examinations. They are, therefore, entitled to relatively little weight. *See, e.g., Hancock v. Secretary of Department of Health, Education, and Welfare,* 603 F.2d 739 (8th Cir.1979). Indeed, Dr. Kohn suggested that further investigation be done regarding the plaintiff's chief complaints of pain. Second, Dr. Friedland's conclusion that he found no evidence of cervical radiculopathy is clearly without support in the record. As the plaintiff argues, Dr. Friedland's diagnosis apparently was due to his failure either to x-ray the plaintiff's cervical area or to examine previously prepared x-ray reports. In any event, based on the opinions of at least three separate doctors, including Dr. Roberts, the record establishes conclusively that the plaintiff does suffer from cervical radiculopathy. Third, two of those evaluations—those by Dr. Kohn and Dr. Torre— were done over a year before Dr. Friedland's latest evaluations. Moreover, they were performed for a program that has not been shown by the Secretary to employ comparable definitions and procedures in determining whether someone is disabled.

Finally, since the Secretary concedes that the medical assessments in the record do not support the ALJ's finding that the plaintiff can perform her past relevant work, the burden shifts to him to show that the plaintiff is not entitled to benefits. *See, e.g., Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986). The Secretary has failed to meet his burden. As noted above, the record does not contain substantial evidence contradicting the opinion of Dr. Roberts that the plaintiff can lift only five pounds. According to the Secretary's own rulings, even sedentary work requires the ability to lift as much as ten pounds. *See*

---

4. The court notes that it appears the Secretary is not seeking remand to reevaluate the plaintiff's claim; rather, it appears he is simply seeking another opportunity to justify a denial of benefits. For example, the Secretary argues that the record does not support reversal because "it is replete with evidence that plaintiff is not disabled," Item 9 at 10, and that "remand is necessary to enable the fact-finder to obtain complete medical evidence and to make findings suffi-ciently clear *to allow effective review by the court." Id.* at 12 (emphasis added). Of course, if the Secretary were to find on remand that the plaintiff is disabled, there would be no review of that finding by the court because the plaintiff, obviously, would not appeal it. It thus seems apparent that, in fact, the Secretary is seeking another opportunity to justify the denial of benefits to the plaintiff.

SSR 83–10.[5] Application of the treating physician rule, *see, e.g., Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984), thus ·mandates a finding of disability. Furthermore, even assuming *arguendo* that the · plaintiff is capable of sedentary or light work,[6] the Act's medical-vocational guidelines indicate that she is disabled within the meaning of the Act in light of her age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 at Table No. 1, Rule 201.01, and Table No. 2, Rule 202.01.

In short, the Secretary has failed to establish that a remand is justified to allow the ALJ an opportunity to obtain additional evidence and to make additional findings. Furthermore, the record establishes that the plaintiff is disabled within the meaning of the Act.

The Secretary's motion for remand is hereby denied. The plaintiff's motion for summary judgment is hereby granted. The case is remanded to the Secretary solely for the calculation of benefits.

So ordered.

---

**5.** Although the plaintiff testified that she could lift "maybe 10 pounds" and carry from five to ten pounds, she also stated that lifting and reaching caused her pain, and the record provides little reason to believe that she could sustain these activities even to the relatively limited extent necessary for sedentary work.

**6.** As noted above, the Secretary has conceded that the assessments contained in the record do not support a finding that the plaintiff is capable of performing medium work.