09-0846-cv
Calabrese v. Astrue

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: "(SUMMARY ORDER)." A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.**

_____At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 23rd day of December, two thousand nine.

PRESENT:    JOHN M. WALKER, JR.,
            REENA RAGGI,
                        *Circuit Judges*,
            JED S. RAKOFF,[*]
                        *District Judge.*

------------------------------------------------------------------
DARLENE HANSELMAN CALABRESE,

                        *Plaintiff-Appellant*,

                v.                                          No. 09-0846-cv

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                        *Defendant-Appellee*.
------------------------------------------------------------------

FOR APPELLANT:              WILLIAM J. MCDONALD, JR., Bond & McDonald, P.C., Geneva, New York.

---

[*] District Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

APPEARING FOR APPELLEE: MICHELLE L. CHRIST, Special Assistant United States Attorney (Stephen P. Conte, Acting Regional Chief Counsel, Region II, Office of the General Counsel, Social Security Administration, New York, New York, *on the brief*), *for* Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, Buffalo, New York.

Appeal from the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the district court's January 13, 2009 judgment is AFFIRMED.

Darlene Hanselman Calabrese appeals from a judgment on the pleadings in favor of the Commissioner of Social Security on her action for review of the denial of disability insurance benefits. She argues principally that the Administrative Law Judge ("ALJ") (1) improperly applied the medical vocational guidelines, (2) erroneously relied on the testimony of a vocational expert presented with hypotheticals that did not reflect all of her limitations, and (3) lacked sufficient grounds for making an adverse credibility finding. "On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks omitted); see also 42 U.S.C. § 405(g). In applying this standard, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

2

In evaluating a disability claim, the Social Security Administration ("SSA") employs a five-step sequential evaluation process. See 20 C.F.R. § 404.1520. Because the parties do not dispute that Calabrese met her burden at steps one through four of the analysis, the only question on appeal is whether the Commissioner adequately demonstrated Calabrese's retention of the necessary residual functional capacity ("RFC") to perform other substantial gainful work existing in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (noting that Commissioner bears burden of proof at step five of analysis). Like the district court, we answer that question in the affirmative.

1.      Application of the Medical Vocational Guidelines

Calabrese submits that, because she suffers nonexertional impairments, the ALJ erred in relying on the medical vocational guidelines (the "grids") to adjudicate her claim. Cf. Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (observing that where individual seeking disability benefits suffers from only exertional impairments, "Commissioner meets his burden at the fifth step by resorting to . . . the grids").[1] We are not persuaded. As we explained in Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986), "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert []or preclude reliance on the [grids]," id. at 603. Rather, "the testimony of a vocational expert . . . that jobs exist in the economy which claimant can obtain and perform" is required only where the "claimant's nonexertional impairments significantly diminish [her]

---

[1] The grids take into account a claimant's RFC, as well as her age, education, and work experience. See Rosa v. Callahan, 168 F.3d at 78. They then "indicate whether the claimant can engage in any substantial gainful work existing in the national economy." Id.

3

ability to work – over and above any incapacity caused solely from exertional limitations – so that [s]he is unable to perform the full range of employment indicated by the [grids]." Id. We assess the need for a vocational expert "on a case-by-case basis," id. at 605, and, in doing so, interpret the phrase "significantly diminish" to refer to an "additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity," id. at 606.

In assessing the extent to which Calabrese's nonexertional limitations "erode[d] the unskilled sedentary occupational base" into which she would otherwise have been placed, the ALJ sought the assistance of a vocational expert. ALJ Op. at 18. Only after obtaining this expert's opinion that Calabrese's RFC, including any nonexertional impairments, would permit her to perform the full range of unskilled sedentary work did the ALJ apply grid rule 201.19 to conclude that Calabrese was not disabled.[2] See id. In short, the ALJ did not consult a vocational expert to identify specific jobs that Calabrese could perform, but only to assist in determining whether Calabrese's nonexertional limitations "significantly limit[ed] the range of work permitted by [her] exertional limitations," Bapp v. Bowen, 802 F.2d at 605 (internal quotation marks omitted), and thus whether application of the grids was proper. In

---

[2] Grid rule 201.19 is a sedentary work rule that applies to claimants between the ages of 45 and 49 with limited education whose prior work is skilled or semi-skilled and whose skills are not transferrable. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. Because Calabrese was younger than 45 on December 31, 2003, the date on which she was last insured, grid rule 201.19 does not accurately reflect her age. To the extent application of that rule was error, however, the error is immaterial, as grid rule 201.25, which applies to claimants between the ages of 18 and 44 with limited education whose prior work is skilled or semi-skilled and whose skills are not transferrable, also mandates a finding that Calabrese is not disabled. See id.

4

light of the ALJ's ultimate finding that Calabrese's "additional [nonexertional] limitations ha[d] little or no effect on [her] occupational base of unskilled sedentary work," ALJ Op. at 18, the ALJ did not err in using the grids to determine Calabrese's disability status. See Bapp v. Bowen, 802 F.2d at 605 (noting that, even in presence of nonexertional limitations, "[i]f the [grids] adequately reflect a claimant's condition, then their use to determine disability status is appropriate"). Because the ALJ concluded from the grids that Calabrese was not disabled, he was not required to identify specific jobs that she was capable of performing.[3] See Heckler v. Campbell, 461 U.S. 458, 470 (1983) (holding that the SSA need not provide "evidence of specific available jobs" that a claimant could perform when relying on the grids); see also 20 C.F.R. § 404.1566(d).

2.    Vocational Expert Testimony

Calabrese argues that the ALJ improperly relied on the vocational expert's testimony because the hypotheticals on which the expert's testimony was based did not accurately reflect her limitations, particularly her borderline IQ. This argument is without merit.

An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, see Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved, see Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981). Here, the hypotheticals presented to the vocational expert were premised on the ALJ's RFC

---

[3] While the vocational expert identified specific jobs that, in his opinion, Calabrese was capable of performing, the ALJ specifically noted that such testimony was "unnecessary for [his] decision." ALJ Op. at 18.

5

assessment made at step four of the analysis.  See Tr. at 68-71.  According to the assessment,

Calabrese had the RFC

> to sit two hours at one time and with normal breaks and meal periods, eight hours in an eight-hour workday; stand and/or walk two hours at one time and with normal breaks and meal periods, eight hours in an eight-hour workday; and lift and carry 20 pounds occasionally and 10 pounds frequently.  She [c]ould not frequently stoop, crouch, kneel or climb stairs, or use her left non-dominant arm above shoulder level. [She] had moderate limitations in concentration, persistence and pace on complex and varied tasks, but none on simple repetitive and routine tasks; moderate limitations in social functioning with moderate limitations in working in close cooperation with the general public, supervisors or fellow workers.  She was not suited for work which requires independent judgment, involves much in the way of changes in work assignments, or is vocationally known to be inherently stressful.

ALJ Op. at 12.

As this RFC assessment is supported by substantial evidence,[4] the content of the

ALJ's hypotheticals was entirely proper.  It is of no moment that the ALJ failed explicitly to

reference Calabrese's borderline IQ.  The limitations the ALJ gave the vocational expert with

respect to Calabrese's ability to make judgments, process and carry out instructions, interact

with others, and handle workplace stress derived from the SSA consultative examiner's

findings, and those findings were, in turn, explicitly based on the examiner's interview of

Calabrese and Calabrese's IQ.  As at least one of our sister circuits has observed, a

hypothetical "need not frame the claimant's impairments in the specific diagnostic terms used

in the medical reports, but instead should capture the concrete consequences of those

---

[4] Indeed, aside from her challenge to the ALJ's credibility findings, which we discuss and reject below, Calabrese does not impugn the ALJ's RFC assessment.

impairments." England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007). The hypotheticals crafted by the ALJ did precisely that. Any challenge to the adequacy of their factual premises therefore fails.

3.    The ALJ's Credibility Assessment

Calabrese's contention that the ALJ failed to provide good reasons for discrediting her allegations regarding the intensity, persistence, and limiting effects of her neck, shoulder, back, and mental impairments is equally unpersuasive. "It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (second alteration in original) (internal quotation marks omitted). Accordingly, where the ALJ's decision to discredit a claimant's subjective complaints is supported by substantial evidence, we must defer to his findings. See id. Even assuming, as Calabrese contends, that the Workers' Compensation Board's partial disability finding and the SSA consultative examiner's conclusion that Calabrese simply relied on others cannot support an adverse credibility determination, the ALJ's adverse credibility finding was nevertheless amply supported by evidence that Calabrese: (1) took no prescription-strength pain medication despite her contention that she constantly experienced pain that was an 8 on a scale of 1 to 10; (2) was noncompliant in taking the medication that was prescribed by her doctors; and (3) admitted her ability to cook, clean, do laundry, shop, and handle her own finances despite her professed claims of disabling and continuous pain and mental confusion. These findings, all of which are supported by the

record, comport with the requirement that, in assessing the credibility of a claimant's statements, an ALJ must consider, <u>inter alia</u>, the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the pain or other symptoms; and any treatment, other than medication, the claimant receives or has received. <u>See</u> 20 C.F.R. § 404.1529(c)(3). In light of this record, the ALJ's decision to discount Calabrese's subjective complaints is supported by substantial evidence.

4.    <u>Conclusion</u>

We have considered Calabrese's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court


By:_____