12-669
*Lawler v. Astrue*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25ᵗʰ day of February, two thousand thirteen.

PRESENT:

> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*,
> LEWIS A. KAPLAN,[*]
> > *District Judge*.

_____

DAVID LAWLER,

> *Plaintiff-Appellant*,

-v.-                                         No. 12-669-cv

MICHAEL J. ASTRUE, Commissioner of Social Security,

> *Defendant-Appellee*.

_____

> CAROLYN A. KUBITSCHEK, Lansner & Kubitschek, New York, NY, *for Plaintiff-Appellant*.

---

[*]The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

AMANDA LOCKSHIN, Special Assistant United States Attorney (Stephen P. Conte, Regional Chief Counsel – Region II, Office of the General Counsel, Social Security Administration, *on the brief*), New York, NY, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Defendant-Appellee*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant David Lawler ("Lawler") appeals from a January 23, 2012 order of the United States District Court for the Northern District of New York (Sharpe, *C.J.*), affirming the denial of his application for Supplemental Security Income ("SSI") and dismissing his complaint. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal.

This Court reviews *de novo* orders granting motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). When reviewing determinations made by the Commissioner, this Court conducts a "plenary review of the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citations omitted). This Court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence, or if incorrect legal standards were applied. *See, e.g., id.* at 127.

Under the Social Security Act, an SSI claimant is disabled if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether an individual is disabled, the Social Security Administration Commission created a five-step

sequential evaluation process. 20 C.F.R. § 416.920.  The analysis proceeds as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (footnote omitted).

Lawler's principal arguments on appeal focus on steps three, four, and five of this process. He contends that the Administrative Law Judge ("ALJ") committed error by, *inter alia*, (1) erroneously disregarding the results of an IQ test taken by Lawler, (2) calculating Lawler's residual functional capacity without consideration of his mental abilities, and (3) failing to consult with a vocational expert when determining if jobs existed in the national economy that Lawler could perform

    1.  Listing 12.05

Lawler first argues that he satisfies the listing for "mental retardation."  *See* 20 C.F.R., Subpart P, App'x 1, 12.05. One way in which a claimant may be considered mentally retarded is if he or she has (1) a valid IQ score between 60 and 70 and (2) "a physical or other mental impairment

3

imposing an additional and significant work-related limitation of function." *See id.* 12.05C. In addition to meeting these qualifications, the claimant must meet a separate burden of showing "deficits in adaptive functioning" that "arise from [his] cognitive limitations." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012). The ALJ determined that Lawler did not meet these requirements because the IQ scores he provided were not valid. We need not determine whether substantial evidence supports the ALJ's determination that Lawler's IQ scores were invalid, because substantial evidence does support the ALJ's additional, and dispositive, determination that Lawler "does not demonstrate limitations in adaptive functioning." While the ALJ did not base her conclusion about listing 12.05 on Lawler's adaptive functioning, this determination and its corresponding support in the record renders remand futile. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005) (citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

As the ALJ noted in her opinion, a state agency review psychologist had concluded that, despite Lawler's IQ scores, there was "insufficient evidence to support a diagnosis of mild mental retardation." The state agency review psychologist supported her opinion by noting: (1) the record showed that Lawler could complete most basic activities of daily living ("ADLs"); (2) Lawler's work problems stemmed from his physical rather than mental impairments; (3) Lawler had not previously been diagnosed with mental retardation; and (4) Lawler was a daily user of marijuana. The record shows that Lawler was not diagnosed with mental retardation despite a series of mental health evaluations, and that he had previously performed semi-skilled and occasionally dangerous jobs. Lawler had ultimately stopped working because of physical rather than mental health issues. Overall, the psychologist's opinion was sufficiently well-supported and consistent with the rest of the record that a reasonable person could decide to afford it weight.

4

## 2. Lawler's Residual Functional Capacity

Lawler argues that the ALJ erred, when determining his residual functional capacity ("RFC"), by failing to consider his mental capacity. Specifically, Lawler contends that even if his IQ is not in the 60s, it would still likely be in the "borderline" range, which most courts consider to be a mental impairment. *See, e.g.*, *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). The ALJ's opinion, however, shows that it did consider Lawler's mental abilities when it calculated his RFC. The ALJ noted several different medical opinions about Lawler's ability to remember and follow instructions, perform simple tasks, and engage in unskilled work. While it is true that the ALJ did not calculate a new IQ score for Lawler, she was not required to do so, and Lawler fails to present any authority that holds otherwise.

## 3. Failure to Use a Vocational Expert

Lawler finally argues that the ALJ erred, when determining whether there were jobs in the national economy that Lawler could perform, by not obtaining the opinion of a vocational expert. "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). A nonexertional impairment will "significantly limit" a claimant's range of work "when it causes an additional loss of work capacity beyond a negligible one, or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 411 (internal quotation marks and alteration omitted).

The ALJ concluded that Lawler's "non-exertional limitations did not significantly narrow the range of work [he] can perform." This determination was supported by substantial evidence in

5

the record. The SSA has defined basic work activities to include: (1) "understanding, carrying out, and remembering simple instructions," (2) "use of judgment," (3) "responding appropriately to supervision, co-workers and usual work situations," and (4) "dealing with changes in a routine work setting." 20 C.F.R. § 416.921(b). As the ALJ noted, both Dr. Malachovsky, one of Lawler's treating physicians, and the state agency review psychologist had concluded that despite his mental issues Lawler should be able to perform unskilled work. While other sources had stated that Lawler had moderate difficulties in concentration and dealing with others, the ALJ correctly noted that either many of these opinions were still consistent with a capability to perform unskilled work or that there were reasons to afford them less weight than others. Moreover, Lawler had previously worked despite these difficulties, and stopped working only because of an injury to his back.

Because the ALJ had substantial evidence to conclude that Lawler's nonexertional impairments did not significantly limit the range of work he could perform, she was likewise under no obligation to identify specific jobs in the national economy that matched Lawler's residual functional capacity. While the Commissioner has the burden to show that a claimant can still perform jobs that exist in the national economy, "[i]n the ordinary case the Secretary satisfies his burden by resorting to the applicable medical vocational guidelines (the grids)." *Bapp*, 802 F.2d at 604. Since the ALJ used the medical-vocational guidelines, she did not need to list specific jobs that Lawler could perform. *See* SSAR 96-9p, 61 Fed. Reg. 34478, 34483 (July 2, 1996) (specific examples of jobs must be given when limitations on claimant's ability to perform sedentary work are "more than . . . slight").

Lawler also argues that the ALJ committed error by not properly considering the materiality of his drug use, by relying on an allegedly superseded Social Security Ruling, and by not

6

considering a handwritten notation on an application for state disability benefits that stated he was not suitable for a state jobs training program. As Lawler did not raise these arguments before the district court, we will not consider them for the first time on appeal. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

We have reviewed Lawler's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk