**Kortney RORICK, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

CIVIL ACTION NO. 3:14–CV–00388–WGY

United States District Court, N.D. New York.

Signed November 22, 2016

Filed 11/23/2016

Peter A. Gorton, Lachman, Gorton Law Firm, Endicott, NY, for Plaintiff.

Benil Abraham, U.S. Social Security Administration, New York, NY, for Defendant.

## MEMORANDUM & ORDER

YOUNG, District Judge.[1]

### I. INTRODUCTION

Kortney Rorick ("Rorick") brings this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to seek a judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Disability and Supplemental Security Income payments (collectively, "benefits"). Compl. ¶¶ 1–2, ECF No. 1. This is the second time Rorick's claim is on review before a court in this district. See Rorick v. Comm'r of Soc. Sec., No. 3:11–CV–0078(GTS), 2012 WL 4107685 (N.D.N.Y. Sept. 18, 2012) ("Rorick I") (Suddaby, J.).[2] On remand, the hearing officer[3] again denied Rorick's request for benefits, and Rorick now asks this Court to reverse that decision or alternatively to remand for further proceedings. Compl. 2.

### A. Procedural History

Rorick first applied for benefits in September 2008. Admin. R. 103, ECF No. 8–5.[4] On February 6, 2009, the Social Security Administration denied both applications. Id. At her request, Rorick appeared

---

1. Of the District of Massachusetts, sitting by reassignment. Reassignment Order, ECF No. 19.

2. On an appeal of Rorick's initial denial of benefits, Judge Suddaby remanded the case, concluding that the hearing officer who determined that Rorick was not entitled to benefits had committed several errors, see generally Rorick I, discussed in more detail infra.

3. For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, 164 F.Supp.3d 249, 252 (D. Mass. 2016).

4. The continuously paginated administrative record in this case is spread across multiple docket entries, from ECF No. 8–1 to ECF No. 8–15. For the sake of simplicity, the Court references the record's internal page numbers and omits ECF numbers.

before a hearing officer on April 12, 2010. Id. at 25–61. On June 23, 2010, the hearing officer issued a written decision denying Rorick benefits. Id. at 840–55. After the Commissioner denied Rorick's request for review by the Appeals Council, id. at 856–60, Rorick sought judicial review in the United States District Court for the Northern District of New York. Rorick I, 2012 WL 4107685. On September 18, 2012, Judge Suddaby remanded the case to the Commissioner, id. at *8, who vacated the hearing officer's initial decision and remanded it to the hearing officer "for further proceedings consistent with the order of the court," Admin. R. 880.

On remand, the hearing officer conducted two additional hearings on June 17, 2013, and October 31, 2013. Id. at 789–839. On February 4, 2014, the hearing officer issued a written decision, again concluding that Rorick is not disabled and thus not entitled to benefits. Id. at 750–80. On April 8, 2014, Rorick filed the present complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision. Compl. 1. The Commissioner filed an answer on August 13, 2014. See Def.'s Answer, ECF No. 7. The case was fully briefed, see Pl.'s Mem. Pursuant General Order No. 18 ("Pl.'s Mem."), ECF No. 14; Def.'s Mem. General Order No. 18 ("Def.'s Mem."), ECF No. 18, and was assigned to this Court on May 5, 2015, see Order Reassigning Case, ECF No. 19.

## B. Factual Background

The Court assumes familiarity with the decision in Rorick I, which outlines the facts pertinent to this case. See Rorick I, 2012 WL 4107685, at *1. Moreover, as Rorick challenges the hearing officer's application of the relevant legal framework to her particular set of facts, those facts are discussed in more detail infra.

## II. LEGAL STANDARDS

■ The applicable standard of review in an action of this kind is well established and discussed in detail in Rorick I, 2012 WL 4107685, at *2–3. So too is the five-step inquiry a hearing officer must undertake, pursuant to 20 C.F.R. §§ 404.1520, 416.920, to determine whether an individual qualifies as disabled and accordingly is entitled to benefits. Rorick I, 2012 WL 4107685, at *3–4. To relate this legal framework here would thus be supererogatory, and the Court pauses only to reiterate that its review is limited to determining whether the Commissioner's decision is supported by substantial evidence and reflects the application of the appropriate legal standards. See, e.g., Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010) (internal citations omitted).

## III. PRIOR DECISIONS

This case has had a long life to this point. Indeed, including the hearing officer's decisions, this opinion is the fourth written ruling regarding Rorick's entitlement to benefits. While the Court's review here concerns the hearing officer's second decision, adopted by the Commissioner, this section briefly summarizes each of the preceding opinions.

## A. Hearing Officer's First Decision

The hearing officer issued his first decision denying Rorick benefits in June 2010. Admin. R. 20. In determining that Rorick was not disabled, and therefore not entitled to benefits, the hearing officer undertook the five-step evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. Id. at 13–20. First, the hearing officer concluded that Rorick "has not engaged in substantial gainful activity since September 30, 2006, the alleged onset date" of her disability. Id. at 14. Second, he determined that Rorick suffers from three severe impairments:

(1) depression, (2) anxiety, and (3) migraine headaches.[5] Id. Third, the hearing officer found that Rorick suffered only "mild restriction[s]" in "activities of daily living" and "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the relevant regulations. Id. at 15.

Before proceeding to step four, the hearing officer determined that Rorick "has the residual functional capacity to perform a full range of work at all exertional levels, but is limited to performing simple, one-two step tasks." Id. This residual functional capacity finding, the hearing officer explained, "is supported by clinical notes and reports from treating sources, the conservative nature of [Rorick's] treatment, daily activities and functioning, the statements and assessments from evaluating and non-examining sources and the rest of the evidence in [the] record." Id. at 18–19.

At steps four and five, the hearing officer determined that Rorick "has no past relevant work," but that given her "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Rorick] can perform." Id. at 19. The hearing officer apparently evaluated the relevant characteristics concerning Rorick's background and abilities "in conjunction with the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2." Id. He found that, although Rorick suffers from non-exertional impairments that "compromise[ ]" her "ability to perform work at all exertional levels[,] .... these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." Id. at 19. Having found that Rorick can perform unskilled work in any exertional category and that such work exists in significant num-

bers, the hearing officer concluded that Rorick is not disabled. Id. at 19–20.

**B.   Rorick I**

In Rorick I, Judge Suddaby reviewed the hearing officer's first decision to determine whether such decision was supported by substantial evidence and involved the application of the correct legal standards. 2012 WL 4107685, at *2–7. Judge Suddaby identified four errors warranting remand in the hearing officer's decision.

First, Judge Suddaby found that the hearing officer "failed to properly develop the record in order to determine whether [Rorick's] knee impairment is severe." 2012 WL 4107685, at *4. Although Rorick brought up her knee condition for the first time at her hearing, Judge Suddaby concluded that the hearing officer was required to consider it. pursuant to his obligation to "look 'fully into the issues.'" Id. (quoting Cruz v. Shalala, 94–CV–0929, 1995 WL 441967, at *4 (S.D.N.Y. July 26, 1995) (internal quotation marks and citation omitted). Moreover, Judge Suddaby noted that the record contained medical evidence of Rorick's knee impairment. Id. at *4–5.

Second, Judge Suddaby found that the hearing officer did not give adequate consideration to the functional implications of Rorick's migraine headaches. Id. at *5. Specifically, Judge Suddaby noted that despite finding that Rorick's migraines constituted a severe impairment, the hearing officer offered no "discussion or analysis of the ... record evidence regarding [Rorick's] migraines" besides simply summarizing Rorick's testimony. Id.

Third, Judge Suddaby concluded that the hearing officer "fail[ed] to explain the weight he accorded to [Rorick's treating physician] and his reasoning regarding the

---

**5.** Rorick's "alleged learning disability, posttraumatic stress disorder, and bronchial asth-

ma" were not deemed severe impairments. Admin. R. 14–15.

same." Id. at *6. The hearing officer's brief mention of Rorick's treating physician—without any explanation of the weight properly due that physician's opinion—was inconsistent with the treating physician rule, see id. at *5–6, and made it impossible for the court "to determine whether the [hearing officer's] determination was supported by substantial evidence," id. at *6.

Fourth, Judge Suddaby found that the hearing officer failed properly to explain his decision to discredit certain of Rorick's statements regarding her functional limitations. Id. at *6–7. It was insufficient, the court held, for the hearing officer to indicate that Rorick was "mostly credible" and then simply state that her reports of her symptoms are "undermine[d]" by "[t]he inconsistency of her psychological treatment" and not credible to the extent they conflict with the residual functional capacity determination. Id. at *7.

## C. Hearing Officer's Second Decision [6]

As in his earlier decision, see Admin. R. 14, the hearing officer determined at step one that Rorick "has not engaged in substantial gainful activity" since her alleged disability onset date in 2006, id. at 756.

The hearing officer then determined at the second step that Rorick had four se-

vere impairments: "bilateral knee disorders, depression, anxiety, and borderline intellectual functioning." Id. at 757. The hearing officer concluded that none of Rorick's other claimed conditions, including migraine headaches,[7] constituted a severe impairment. Id. at 758–62.

At step three, the hearing officer found that Rorick's impairments did not "meet[ ] or medically equal ... one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id. at 762–63.

Before proceeding to step four, the hearing officer determined Rorick's residual functional capacity:

> After careful consideration of the entire record, I find that [Rorick] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with additional mental limitations. Specifically, [Rorick] can occasionally lift, carry, push, or pull 20 pounds; can frequently lift, carry, push, or pull 10 pounds; can stand or walk, in combination, for 6 hours total in an 8–hour workday with normal breaks; can sit for 6 hours total in an 8–hour workday with normal breaks; and is limited to performing simple, one-to-two step tasks.

Id. at 765.

To reach the findings, the hearing officer "considered all symptoms and the ex-

---

**6.** On remand, in addition to undertaking the five-step analysis set forth in the relevant regulations, the hearing officer was, pursuant to Rorick I, tasked with (1) developing the record as to Rorick's knee impairment and determining whether it was "severe," 2012 WL 4107685, at *4–5; (2) explaining the reasoning behind his determination regarding the extent of the functional limitations caused by Rorick's migraine headaches, id. at *5; (3) explaining the weight he assigned to the opinion of Rorick's treating physician and why such weight is appropriate, id. at *6; and (4) explaining in more detail his evaluation of Rorick's credibility and specifically his decision to discredit certain of her statements, id.

at *7. See Admin. R. 880 (Order of Appeals Council "vacat[ing] the final decision of the Commissioner of Social Security and remand[ing] the case to a [hearing officer] for further proceedings consistent with the order of the court" in Rorick I).

**7.** The hearing officer conducted a de novo assessment for the present decision and found that Rorick's migraines were not a severe impairment notwithstanding that this finding contradicts his previous finding in the 2010 decision. Admin. R. at 762; see also id. at 845.

tent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96–4p and 96–7p." Id. The hearing officer did not credit Rorick and the mother's statements regarding her "intensity, persistence and limiting effects of these symptoms" because of her "limited use of medication and course of medical treatment for her knee complaints" and "inconsistent statements regarding the severity of her condition and overall response to treatment[.]" Id. at 767. He also assessed the credibility of the expert opinion evidence in Rorick's record. See id. at 769–78. The hearing officer gave "great weight" to the opinion of the state agency physician Dr. Hochberg because "it was supported by objective medical evidence and other substantial evidence in the record," id. at 772, but gave little or no weight to other expert opinion evidence. See id. at 767–78.

At the fourth and fifth steps, the hearing officer found that Rorick has no past relevant work experience and that she can perform work that exists in significant quantities in the national economy. Id. at 779. To arrive at this conclusion, the hearing officer consulted the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Id. at 779–80. While the hearing officer also took testimony from a vocational expert, he found that it was "unnecessary," as Rorick does not suffer from any non-exertional limitations that would preclude her from performing unskilled, light work. Id.

On the basis of the above analysis, the hearing officer concluded that Rorick was not disabled from September 30, 2006 through the date of the decision, and accordingly denied her claim for benefits. Id. at 780.

## IV. ANALYSIS

Rorick challenges the Commissioner's decision on three grounds. First, she argues that the hearing officer's residual functional capacity determination is not supported by substantial evidence. Pl.'s Mem. 9–21. Second, she argues that the hearing officer erred in declining to find that her migraines were a severe impairment. Id. at 21–22. Third, she contends that the Commissioner did not satisfy her burden of proof at the fifth step of the disability inquiry. Id. at 22–25.

### A. Residual Functional Capacity Determination

"[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96–8P, 1996 WL 374184, at *2 (July 2, 1996). Work–related mental capacity includes "understanding, carrying out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting." Golden v. Colvin, No. 5:12–CV–665 GLS/ESH, 2013 WL 5278743, at *3 (N.D.N.Y. Sept. 18, 2013) (Sharpe, J.) (citing SSR 96–8P, 1996 WL 374184, at *6). A residual functional capacity must be based on "all ... medically determinable impairments of which [the Commission is] aware" from all relevant records. 20 C.F.R. § 416.945(a).

■ Rorick argues that the hearing officer's residual functional capacity determi-

nation is flawed insofar as it fails to take into account the extent of her limitations in "mental and intellectual functioning." Pl.'s Mem. 9. Rorick's argument with respect to the residual functional capacity determination is based primarily on her claim that the hearing officer failed to evaluate properly the various medical opinions on record. Accordingly, this section discusses the hearing officer's assessment of the medical opinion evidence.[8]

### 1. Dr. Denzien

■ Rorick argues that the hearing officer erred in failing to assign any weight to the opinion of Dr. Darlene Denzien, Rorick's treating physician. Meanwhile, the Commissioner maintains that the hearing officer's decision to discredit Dr. Denzien is supported by substantial evidence and justified by the hearing officer's analysis.

Under the treating physician rule, a treating source's opinion is "[g]enerally" given "more weight" because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Such opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [a claimant's] case record." Id.

When controlling weight is deemed unwarranted, a hearing officer must consider:

(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Id. Moreover, the hearing officer must "give good reasons" for the determination as to how much weight was given. Id.

Here, the hearing officer's decision to give Dr. Denzien's opinion no weight is supported by the record, and the hearing officer adequately explained the reasoning behind discrediting her opinion. Although Dr. Denzien's questionnaires concerning Rorick's limitations indicate "marked" or "extreme" limitations in several areas and states that Rorick's condition would cause her to miss more than three days of work per month, Admin. R. 622–24, 1288–91, the hearing officer identified contradictory evidence in Dr. Denzien's own treatment notes and elsewhere in the record, id. at 776–77. Indeed, much of the evidence that Rorick marshals to show there is support for Dr. Denzien's findings, see Pl.'s Mem. 15, in fact cuts the other way, or at least is not inconsistent with the hearing officer's conclusion.[9] As the hearing officer pointed

---

**8.** It is worth noting at the outset of this section that to the extent Rorick's claim of error as to the residual functional capacity is based on the mere existence of evidence that would support a more limited residual functional capacity, see Pl.'s Mem. 9–10, 19–20, that argument fails. Indeed, to prevail here, Rorick must establish some legal error on the part of the hearing officer or show that the hearing officer's conclusions are not supported by substantial evidence. Merely pointing to evidence that supports a conclusion contrary to that of the hearing officer is insufficient. See McIntyre v. Colvin, 758 F.3d 146,

149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); Ventura v. Barnhart, No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result.").

**9.** For example, Rorick cites Dr. Mary Ann Moore's psychiatric evaluation as evidence consistent with Dr. Denzien's opinion, but this evaluation is mixed at best. While the

out, Dr. Denzien's treatment records contain few clinical findings and actually show improvements in Rorick's condition. Moreover, Dr. Denzien's checklist answers varied across questionnaires. See Montaldo v. Astrue, No. 10 CIV. 6163 SHS, 2012 WL 893186, at *15 (S.D.N.Y. Mar. 15, 2012) (inconsistencies across treating physician's questionnaires was among "good reasons" not to afford that physician's opinion controlling weight).

Under these circumstances, it was proper for the hearing officer to assign no weight to Dr. Denzien's opinion. That the hearing officer did not explicitly consider each and every regulatory factor in her explanation of Dr. Denzien's opinion does not call for reversal. See Orts v. Astrue, Civ. No. 5:11–512, 2012 WL 6803588, at *11 (N.D.N.Y. Nov. 14, 2012) (Hines, M.J.) ("While [the hearing officer] could have discussed the factors listed in the regulations neatly and in more detail, this shortcoming does not amount to reversible error because the rationale for her decision

is clear and her ultimate determination is supported by substantial evidence."). Furthermore, the hearing officer was not required to take further steps to develop the record simply because he found evidence contradicting Dr. Denzien's opinion. See Micheli v. Astrue, 501 Fed.Appx. 26, 29–30 (2d Cir. 2012) ("The mere fact that medical evidence is conflicting or internally inconsistent does not mean that a [hearing officer] is required to re-contact a treating physician. Rather ... the [hearing officer] will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent.").

### 2. Pollack

Rorick argues that the hearing officer erred in discrediting the Licensed Social Worker Caroline Pollack's Global Assessment of Functioning ("GAF") score.[10] Pl.'s Mem. 12–13. The hearing officer rejected such score because it was based on a single examination and was inconsistent with

---

self-reports contained therein could support Dr. Denzien's conclusions about Rorick's ability to function, the "mental status examination" Dr. Moore conducted indicates that Rorick "is generally cooperative to response to questioning," "[h]er manner of relating socially is adequate," she has "[c]oherent and goal directed" thought processes," and "mildly impaired" attention and concentration. Admin. R. 202–03. The same goes for the examination by Dr. Sarah Long, which states, among other things, that Rorick "was cooperative with good social skills," had "[c]lear and fluent" speech "with adequate receptive and expressive language," "was coherent and goal directed," and "displayed a full range of appropriate affect in speech and thought content." See id. at 261–66. Other evidence Rorick cites, such as her "Individualized Education Program" assessment, Admin. R. 184–90, simply does not bear on the content of Dr. Denzien's medical opinions.

**10.** The Second Circuit explains the scores of GAF as follows:

The GAF scale ranges from 0 to 100; GAF scores from 61–70 indicate some mild symptoms or some difficulty in social, occupational, or school situations, but general functioning and the existence of some meaningful personal relationships. GAF scores between 51–60 indicate that the individual has moderate symptoms or moderate difficulty in social, occupational, or school situations.

Petrie v. Astrue, 412 Fed.Appx. 401, 406 n.2 (2d Cir. 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 376–77 (4th ed. 2000)). "[A] GAF score 'does not have a direct correlation to the severity requirements in [the SSA's] disorders listings.'" Daniel v. Astrue, No. 10–CV–5397 NGG, 2012 WL 3537019, at *10 (E.D.N.Y. Aug. 14, 2012) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injuries, 65 Fed. Reg. 50746, 50764–65 (2000)). In other words, the GAF score is not a conclusive element for determining the claimant's social functioning skills.

other GAF evaluations in the record.[11] Admin. R. 774–75. According to Rorick, the hearing officer was not entitled to discredit an evaluation on the ground that it was based on a single examination, while at the same time giving weight to other medical opinions from consultants who did not perform an examination at all. Pl.'s Mem. 12. The problem with this argument is that in evaluating the weight that ought be given to a medical opinion, the level of interaction between the source and the claimant is but one factor that the hearing officer considers. See 20 C.F.R. § 404.1527(c). Thus, the hearing officer's approach here was not inconsistent because there were other reasons for discrediting Pollack's opinion and crediting those of the consulting medical sources. Specifically, there were other GAF findings in the record that were higher than that which Pollack found. Admin. R. 225, 1297. It was up to the hearing officer to determine which of these GAF scores to credit, if any. See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citing Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)) (holding that it is the Commissioner's role to resolve the conflicting evidence).

### 3. Campbell

■ The hearing officer gave "little weight" to school psychologist Robert Campbell's assessment of Rorick's "reading disorder and learning disorder in the area of reading comprehension" conducted in 2003 because it was not supported by the evidence. Admin. R. 775. Rorick argues that this was error and that the evidence the hearing officer cited in support of his conclusion, is not, in fact, inconsistent with Campbell's findings. Pl.'s Mem. 13. Rorick's argument fails here because various reports in the record, including in Rorick's

own testimony, demonstrate that Rorick's capabilities are less limited than Campbell's report would seem to reflect. Rorick notes, for example, that the fact that she obtained a driver's license is not inconsistent with the reading comprehension issues indicated in Campbell's report, because "there is no significant reading test required to obtain a driver's license." Id. That may be, but a subsequent evaluation by psychiatrist Mary Ann Moore found that Rorick could read at the high-school level, Admin. R. 209, in contrast to the fourth-grade level as determined by Dr. Campbell, id. at 200. Faced with this conflicting evidence, it was again up to the hearing officer to determine the proper weight due each assessment, see Cage, 692 F.3d at 122, and thus the hearing officer did not err by assigning Campbell's assessment only limited weight.

### 4. Dr. Skiff

■ The hearing officer also gave "little weight" to physician James Skiff's opinion that Rorick is "temporarily disabled." Admin. R. 215, 775. Rorick maintains that the hearing officer improperly discredits Dr. Skiff's opinion due to its basis on a single examination. Pl.'s Mem. 13–14. For the reasons discussed supra with respect to Pollack's GAF assessment, this argument fails. Rorick next argues that the hearing officer ought have evaluated Dr. Skiff's opinion pursuant to the treating-source framework set forth in the regulations, 20 C.F.R. § 404.1527. Pl.'s Mem. 14. But in fact, the hearing officer properly concluded that Dr. Skiff did not constitute a treating physician because his opinion was based on a one-time evaluation of Rorick for the purpose of determining her ability to work. See 20 C.F.R. § 404.1502. Finally, to the extent Dr. Skiff made any conclusions on

---

11. Indeed, as cited by the hearing officer, LMSW Lydia A. Smith and Dr. Robert Web-ster assessed Rorick's GAF score as 55 and 60, respectively. Admin R. 225, 1297.

the ultimate issue of whether Rorick was disabled, such opinion is not entitled to deference as a medical opinion. See 20 C.F.R. § 404.1527(d)(1) ("[The Commissioner is] responsible for making the determination or decision about whether you meet the statutory definition of disability .... A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled."); Paterson v. Colvin, No. 12–CV–3020 LTS JLC, 2014 WL 4419688, at *13 (S.D.N.Y. Sept. 9, 2014), report and recommendation adopted sub nom. Paterson v. Comm'r of Soc. Sec., No. 12CV3020–LTS–JLC, 2014 WL 4977493 (S.D.N.Y. Oct. 3, 2014) (citations omitted).

### 5. Barre

■ The hearing officer gave "no weight" to therapist Dianne Barre's assessment that Rorick suffers from "marked limitations in almost all mental activities involving concentration and persistence, interaction with others, and adaptation stress." Admin. R. 777 (citing id. at 1496–98). In explaining this conclusion, the hearing officer noted that Barre's opinion "appears to be based primarily on [Rorick's] subjective complaints of symptoms and functional limitations versus the clinical medical evidence." Id. The hearing officer also observed that Barre's assessment addressed only the later portion of the period of alleged disability (beginning in October 2013) and that Dr. Webster did not sign the assessment. Id.

Rorick argues that Barre's opinion ought have been given more weight under the treating-physician framework. See Pl.'s Mem. 17. That framework is inapplicable here, however, as Barre does not constitute a treating medical source under the definition provided in the regulation. See 20 C.F.R. § 404.1513. As an "other

source[ ]," id. § 416.913(d), it was within the hearing officer's "discretion to determine the appropriate weight to accord [that source's] opinion based on all the evidence before him," Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995). Moreover, the hearing officer's consideration of the basis for Barre's opinion (largely Rorick's subjective complaints) was appropriate. Cf. Rivera v. Colvin, 592 Fed.Appx. 32, 33 (2d Cir. 2015) (concluding there was no error on the part of hearing officer who accorded less weight to Veteran's Administration assessment finding claimant disabled, on the ground that "the VA determination relied heavily on [the claimant's] subjective complaints rather than objective medical findings"). As the hearing officer acted within the bounds of his authority and there was substantial evidence in the record to support his decision to largely discredit Barre's opinion, there is no error.

### 6. Vincent

■ Rorick challenges the hearing officer's decision to reject the opinion of physician assistant Patricia Vincent, who found "that [Rorick] is unable to work for 6 months due in part to her bipolar disorder." Admin. R. 777. In support of this determination, the hearing officer observed that "[t]here were no objective clinical signs or significant observations noted on examination of [Rorick]" at the time Rorick was examined by Vincent. Id. Rorick claims that this is a flawed basis on which to reject Vincent's opinion because "the symptoms of psychiatric illness do not manifest themselves 24 hours a day, 7 days a week," and therefore Rorick cannot have been expected to exhibit "positive symptoms at every medical examination." Pl.'s Mem. 18.

Rorick's argument fails for a number of reasons. First, while Vincent's opinion properly may be taken to account as that of an "[o]ther source[ ]" under 20 C.F.R.

§ 416.913(d), Vincent is not an "acceptable medical source" whose opinion can establish the existence of a medically determinable impairment, id. § 416.913(a). Moreover, even under the applicable framework for evaluating the opinions of acceptable medical sources, the hearing officer was entitled to consider the dearth of positive clinical findings and observable symptoms included in Vincent's report in determining how much weight to assign it. See 20 C.F.R. § 404.1527(c)(3) (providing that "[t]he more a medical source presents relevant evidence to support an opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion"). The hearing officer specifically discredits Vincent's opinion to the extent it bears on the symptoms of Rorick's bipolar disorder. Admin. R. 777. This is a sensible judgment considering Rorick went to see Vincent for her knee problems. See id. at 1396. Finally, as the Commissioner is charged with making the ultimate determination regarding whether a claimant is disabled, the hearing officer was not required to give any weight to Vincent's opinion that Rorick ought refrain from working. See 20 C.F.R. § 404.1527(d).

In sum, the hearing officer's residual functional capacity determination is not undermined by any error with respect to the hearing officer's weighing of the various medical sources of record here.

## B. Migraine Headaches

■ Rorick next argues that the hearing officer erred in concluding that Rorick's migraines are not a severe impairment. According to Rorick, the hearing officer "arbitrarily change[d] his mind," having previously (and correctly) found in his initial decision that Rorick's migraines did constitute a severe impairment. Pl.'s Mem. 21–22. The Commissioner maintains that the hearing officer's determination is supported by substantial evidence. Def.'s Mem. 5–7. Before evaluating whether the Commissioner's determination is supported by substantial evidence, the Court first looks at whether the hearing officer's change of course violates the law of the case doctrine.

In Rorick I, Rorick argued that the hearing officer erred in "failing to consider the functional limitations caused by [Rorick's] migraine headaches." 2012 WL 4107685, at *1. The Commissioner countered that the hearing officer properly "concluded that [Rorick's] migraines do not cause additional, non-exertional limitations and are consistent with her ability to perform simple work." Id. at *2. On review, Judge Suddaby held that the hearing officer indeed "[e]rred in [f]ailing to [c]onsider the [f]unctional [i]mpairments [c]aused by [Rorick's] [m]igraine [h]eadaches," or at least failed adequately to explain his reasoning for omitting any impairments related to Rorick's migraines from Rorick's residual functional capacity. See id. at *5. Specifically, the court wrote:

> Here, the [hearing officer] clearly found that [Rorick's] migraine headaches constitute a severe impairment. However, aside from a summary of [Rorick's] hearing testimony, the remainder of the [hearing officer's] decision is devoid of any discussion or analysis of the remaining record evidence regarding Plaintiff's migraines. Accordingly, the Court cannot judge whether or not the [hearing officer] considered the functional limitations caused by [Rorick's] migraines when he determined her residual functional capacity. For this reason, remand is appropriate so that the [hearing officer] may sufficiently explain his reasoning.

Id. Whether, on remand, the hearing officer was entitled essentially to disregard

his initial determination that the migraines constituted a severe impairment and make such determination "de novo," as he did, Admin. R. 762, depends on whether his initial determination became "law of the case" following judicial review.[12] In other words, if the reviewing court explicitly or implicitly affirmed the hearing officer's finding that Rorick's migraines were a severe impairment, then the hearing officer was not entitled to abandon that finding on remand. See Calderon v. Astrue, 683 F.Supp.2d 273, 276–77 (E.D.N.Y. 2010).

In Calderon, the hearing officer originally found that the claimant lacked the functional capacity to perform his prior work, but that he was not disabled because there existed other jobs in the national economy that he was capable of performing. Id. at 275. On review, the court vacated the hearing officer's decision on the ground that the hearing officer had failed adequately to explain his reasoning for not assigning controlling weight to the opinion of Calderon's treating physician, and remanded to the hearing officer for further proceedings. See id. In the hearing officer's subsequent decision, he again concluded that Calderon was not disabled, but this time such conclusion was based on this finding that Calderon could, in fact, perform his prior work. Id. at 276 ("In short, [the hearing officer] disavowed his prior step-four determination, thereby obviating the need to address the step-five error identified in the Court's [memorandum and order]."). Calderon argued that this was error insofar as

the hearing officer's finding that Calderon was unable to perform his past job had become law of the case, id. while the Commissioner argued "that his internal operating procedures required [the hearing officer] to redetermine all issues on remand," id. at 277. The court sided with Calderon, finding that by identifying an error at step five of the disability inquiry (i.e., in the determination that there existed other jobs in the national economy that Calderon could perform), the court had implicitly affirmed the hearing officer's step-four determination that Calderon was incapable of performing his past work. See id. at 276–77. It noted that the Commissioner's procedures only require that the hearing officer " 'consider all pertinent issues de novo.' " Id. at 277 (quoting Soc. Sec. Admin., Hearings, Appeals & Litig. Law Manual § I–2–8–18 (2008)).

Carrillo v. Heckler, 599 F.Supp. 1164 (S.D.N.Y. 1984), involved similar circumstances. There, the claimant, Carillo, claimed disability as of August 1978. Id. at 1166. The hearing officer initially denied her application for benefits on the ground that she was capable of performing her past relevant work. Id. at 1167. On review, the court held that the record lacked substantial evidence to support this determination, and remanded the case to the hearing officer. Id. The hearing officer then concluded, on remand, that Carillo was disabled as of August 1982, but that she had no severe impairments before that date. Id. Carillo appealed this decision to

---

**12.** While the Second Circuit has apparently yet to rule on whether the law of the case doctrine applies to hearing officers in social security proceedings, several district courts within this Circuit have so held. See, e.g., Bradley v. Colvin, 110 F.Supp.3d 429, 441 (E.D.N.Y. 2015) (noting that "[c]ourts in the Second Circuit have regularly acknowledged that remand instructions to an [hearing officer] from a federal district court in Social Security cases constitute the law of the case"

and listing cases that accord with this principle). This doctrine, " 'while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' " Id. (quoting Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008)) (internal quotation marks and citations omitted).

the district court, which held that the hearing officer's second decision was error. Id. Specifically, it concluded that the hearing officer "reversed his earlier, implicit finding that [Carillo's] impairment was severe during that time period [from 1978 to 1982] and went beyond the scope of [the court's] remand order:

> There is no provision in the Act for correction of errors in the initial determination based on some arguably more informed, later review of the same evidence. Thus, absent a finding by the district court on appeal that the initial determination was not based on substantial evidence or application of an erroneous legal standard, there is no reason or basis for evaluating an earlier finding based on the same evidence.

Id. at 1168.

Here, the hearing officer initially expressly determined that Rorick's migraines constituted a severe impairment. See Admin. R. 14. Contrast Carrillo, 599 F.Supp. at 1168 (hearing officer's "determination that plaintiff's impairment was severe was implicit in the fact that he reached the issue whether she could return to her prior work"). As in Carillo and Calderon, the court then "implicitly affirmed" this finding by remanding with instructions for the hearing officer to "sufficiently explain his reasoning" behind his residual functional capacity determination—which did not include any functional limitations related to Rorick's migraines. Rorick I at *5. Strictly speaking, the hearing officer's reevaluation of his earlier finding was error. See Carrillo, 599 F.Supp. at 1168 (hearing officer erred in reconsidering severity of Carillo's impairments since court's "opinion did not state that the [hearing officer's] finding of severity was not supported by substantial evidence," and further that "[i]f the evidence had been insufficient to support a finding that the impairment was severe the court would

not have remanded the action to the [hearing officer] for consideration of whether plaintiff could return to her prior work, but rather would have affirmed the [hearing officer's] decision and treated the failure to properly consider whether plaintiff could return to work as harmless error").

▪ Rigid adherence to the law of the case doctrine here, though, distracts from the practical realities of what the court in Rorick I asked the hearing officer to do on remand and what the hearing officer in fact did. The court found that because the hearing officer's decision omitted any evaluation of the implications of Rorick's migraines, it was unable to "judge whether or not the [hearing officer] considered the functional limitations caused by [Rorick's] migraines when he determined her residual functional capacity." Rorick I at *5. Thus, the court did not order that the hearing officer include migraine-related functional limitations in Rorick's residual functional capacity; rather, it directed the hearing officer to consider whether Rorick's migraines impede her functional capacity, and to explain why or why not. On remand, the hearing officer did just that:

> I find that the objective medical evidence and other substantial evidence do not result in more than slight or minimal limitations of functioning related to the claimant's migraines or headaches for any period at issue before me. The record does not support frequent absences from work; significant off-task behavior; difficulty concentrating due to head pain and light sensitivity; the need to avoid flashing lights, television screens, video monitors, or computer screen due to light sensitivity; or any other significant limitation due to headaches and migraines.

Admin. R. 760. The hearing officer further noted a lack of objective medical evidence of "uncontrolled headaches or migraines," pointed to medical records that do not

indicate "any persistent disorganization of motor functioning or permanent residuals as a result of headaches or migraines," and observed that Rorick's course of treatment for this condition has been relatively conservative and has produced improvements. Id. at 760–61.

There is substantial evidence to support the hearing officer's above observations. Thus, omission of migraine-related limitations from Rorick's residual functional capacity is, itself, not error. Instead of concluding that Rorick's migraines were a severe impairment that did not impose limitations that ought factor into her residual functional capacity, though, the hearing officer concluded that Rorick's migraines were a nonsevere impairment, id.—i.e., one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities[,]" 20 C.F.R. § 404.1521. The Court fails to see the practical difference between these two conclusions. Were the Court to remand this case for further proceedings consistent with the law of the case doctrine, all the hearing officer would have to do to remedy his error would be to re-adopt his earlier conclusion that Rorick's migraines were a severe impairment, and then, using the same explanation he included here regarding the effects of her migraines, show that he considered the functional implications of her migraines in determining her residual functional capacity. Because there exists substantial evidence to support the hearing officer's residual functional capacity determination and the hearing officer adequately explained how he arrived at such determination, the Court considers this an exercise in futility. Accordingly, although reconsideration of the severity of Rorick's migraines was

technically beyond the scope of the hearing officer's mandate on remand, this error was harmless. See Tryon v. Astrue, No. 5:10–CV–537 (MAD), 2012 WL 398952, at *4 (N.D.N.Y. Feb. 7, 2012) (D'Agostino, J.).

### C. Step–Five Determination

Rorick claims that the hearing officer erred in failing to incorporate vocational expert testimony into his findings at step five. Pl.'s Mem. 23. She asserts that since her nonexertional impairments significantly diminish her work ability, a vocational expert's testimony must be used to make this determination. Id. at 23–24.

■ At step five of the disability inquiry, the Commissioner bears the burden of proving that a significant number of jobs exist in the national economy for a person who has similar "residual functional capacity and the vocational factors of age, education, and work experience" of the petitioner. 20 C.F.R. § 404.1560(c)(1). In making this determination, a hearing officer "[i]n the ordinary case" may rely on the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app'x 2 (the "grids"). Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). "Sole reliance on the grids is inappropriate, however, where a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations.'" Lomax v. Comm'r of Soc. Sec., No. 09–CV–1451 ARR, 2011 WL 2359360, at *3 (E.D.N.Y. June 6, 2011) (quoting Bapp, 802 F.2d at 605).[13] In these circumstances, the hearing officer must look to vocational expert testimony "or other similar evidence" to aid in his determination of whether jobs exist that the claimant can perform. Bapp, 802 F.2d at 606.

---

13. A claimant's work capacity is "significantly diminish[ed]" by nonexertional impairments when such impairments produce an "additional loss of work capacity ... that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp, 802 F.2d at 606.

Here, the hearing officer "took testimony from a vocational expert ... based on a hypothetical that included additional limitations" besides the ones the hearing officer ultimately adopted in his residual functional capacity determination. Admin. R. 780. The hearing officer declined to use that testimony in determining whether Rorick was disabled, however, concluding that, "in the absence of any non-exertional limitations involving unskilled work, and in the absence of the preclusion of any other mental work functions, the testimony of a vocational expert is unnecessary." Id.

 Consistent with the Court's analysis supra of the hearing officer's evaluation of the relevant medical opinion evidence, substantial evidence supports the hearing officer's residual functional capacity determination here, which incorporates nonexertional limitations only insofar as it limits Rorick to work involving "simple, one-to-two step tasks." Id. at 765. Indeed, while Rorick argues that the reports of various medical practitioners show that she suffers "significant, non-exertional limitations ... directly relating to the basic mental demands for performing unskilled work," Pl.'s Mem. 10, the hearing officer, in discharging his duty to evaluate credibility and resolve evidentiary conflicts, appropriately concluded that Rorick's mental impairments do not meaningfully impede her ability to perform "basic" work tasks, see Admin. R. 779. Because substantial evidence supports the hearing officer's finding that Rorick is capable of meeting the mental demands of the unskilled work,[14] it was permissible for the hearing officer to base his step-five determination on consultation of the grids alone. See, e.g., Woodmancy v. Colvin, 577 Fed.Appx. 72, 76 (2d Cir. 2014) ("[B]ecause there is substantial evidence that [the claimant's] nonexertional impairments did not significantly limit the range of work permitted by her exertional limitations, the [hearing officer] was not required to consult a vocational expert.") (internal quotation marks, citation, and alteration omitted); Zabala, 595 F.3d at 411 ("The [hearing officer] found that Petitioner's mental condition did not limit her ability to perform unskilled work .... Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the [hearing officer's] use of the [grids] was permissible.").

## V. CONCLUSION

For the foregoing reasons, the Court affirms the decision of the Commissioner and dismisses Rorick's complaint, ECF No. 1.

**SO ORDERED.**

---

14. Social security regulations define "unskilled work" as follows:

Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs. 20 C.F.R. §§ 416.968(a), 404.1568(a). Social Security Ruling 85–15 (which the hearing officer cites in his decision, Admin. R. 779) sheds further light on "[t]he basic mental demands of competitive, remunerative, unskilled work," which include "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15, 1985 WL 56857.