ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Timothy E. King ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 11) is denied.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on August 28, 2013. (Dkt. 10 at 15, 153-163).[2] In his applications, Plaintiff alleged disability beginning August 21, 2012, due to asthma, lower back pain, and neck pain. (Id. at 15, 184). Plaintiff's applications were initially denied on November 22, 2013. (Id. at 15, 83-88). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bruce S. Fein in Syracuse, New York, on August 13, 2015. (Id. at 15, 29-59). Plaintiff appeared with his attorney and testified. (Id. at 31). On October 16, 2015, the ALJ issued an unfavorable decision. (Id. at 12-23). Plaintiff requested Appeals Council review; his request was denied on March 1, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 5-7). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration *280 ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.
*281 Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2014. (Dkt. 10 at 17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since August 21, 2012, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the cervical spine and degenerative disc disease of the lumbar spine. (Id. at 17-18). The ALJ further found that Plaintiff's medically determinable impairments of breathing difficulties associated with asthma, left shoulder pain, and history of learning disabilities were non-severe. (Id. at 18-19).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 19). The ALJ particularly considered the criteria of Listing 1.04 in reaching his conclusion. (Id. at 19).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), which involves:
lifting and/or carrying 20 pounds occasionally and ten pounds frequently, standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. He can occasionally climb, kneel, crouch, stoop, balance, and crawl.
(Id. at 19-22). At step four, the ALJ found that Plaintiff had no past relevant work. (Id. at 22).
At step five, the ALJ relied on the Medical-Vocational Guidelines to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Id. at 22-23). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 23).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the RFC is not supported by substantial evidence because the ALJ did not properly weigh opinion evidence from treating sources Vincent Gemelli, RPA-C (hereinafter "PA Gemelli") and Laura Martin, D.O. and (2) the ALJ's step five determination is not supported by substantial evidence because the ALJ did not elicit testimony from a vocational expert. (Dkt. 11-1 at 13-18). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.
A. Weighing of "Treating Source" Opinions
As a threshold matter, Plaintiff characterizes both PA Gemelli and Dr. Martin as "treating physicians." (See Dkt. 11-1 at 14 ("The ALJ's analysis of the treating physician opinion from PA Gemelli and Dr. Martin is not supported by substantial evidence") ). In May 2014, PA Gemelli prepared a medical source statement, which was co-signed by Dr. Martin. (Dkt. 10 at 277-80). However, a closer look at the record - and the law - reveals that *282 neither PA Gemelli's nor Dr. Martin's opinion is entitled to the deference afforded to treating physician opinions. First, PA Gemelli cannot give a "treating source" opinion. Because they are not acceptable medical sources pursuant to the Regulations, physician assistants cannot be considered treating sources subject to the treating physician rule. See Ortiz v. Comm'r of Soc. Sec. , No. 1:15-cv-00826-MAT, 2018 WL 1000042 at *3, 2018 U.S. Dist. LEXIS 27873 at *9 (W.D.N.Y. Feb. 21, 2018) ("contrary to Plaintiff's argument, PA Galley's letter does not qualify as a medical source statement from a treating physician. A physician's assistant is not a recognized treating source under the applicable regulations"); Bogardus-Fry v. Astrue , No. 7:11-CV-883 (MAD), 2012 WL 3779132 at *11, 2012 U.S. Dist. LEXIS 124364 at *32 (N.D.N.Y. Aug. 31, 2012) ("Based upon the Regulations, Snider is not a treating source subject to the treating physician rule because a physician's assistant is not an acceptable medical source").
Regarding Dr. Martin's opinion, generally "medical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion." Gandino v. Comm'r of Soc. Sec. , 2018 WL 1033287, at *7, 2018 U.S. Dist. LEXIS 28179, at *16 (N.D.N.Y. Feb. 22, 2018) ; see also Santiago v. Barnhart , 441 F.Supp.2d 620, 628 (S.D.N.Y. 2006) ("[T]here is no reason to believe that the report [the treating doctor] signed does not reflect his own view. Nor is there any legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight. Since [the treating doctor] signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting [the doctor's] opinion on this basis alone"). However, the ALJ is not required to consider Dr. Martin a treating source simply because she signed the May 2014 medical source statement; rather, the ALJ is required to consider the examining and treatment relationship between Dr. Martin and Plaintiff. See Gandino , 2018 WL 1033287, at *7, 2018 U.S. Dist. LEXIS 28179, at *17 (ALJ properly noted that physician who co-signed medical assessment was not a treating source, because the record did not show that the doctor ever examined the plaintiff, and it was the plaintiff's burden to supply such evidence); see also Bogardus-Fry , 2012 WL 3779132, at *11, 2012 U.S. Dist. LEXIS 124364, at *32 ("while the January 2010 MSS was co-signed by Dr. Williams, the Court finds no evidence that Dr. Williams had a treating relationship with plaintiff. The record contains only one treatment record prepared by Dr. Williams...."). Based on the record before the Court, it does not appear that Dr. Martin treated Plaintiff on an ongoing basis, and there are no treatment or visit notes authored by Dr. Martin, other than the May 2014 medical source statement. Accordingly, Dr. Martin was not a treating source, and the ALJ was not required to give her opinion controlling weight.
Based on PA Gemelli's status as a physician assistant and Dr. Martin's status as a non-treating source, their opinions were not entitled to the heightened consideration accorded to treating physician opinions. When weighing the opinions of "other sources," such as a physician assistant, the ALJ must consider various factors, including:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the *283 opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Pike v. Colvin , No. 14-CV-159-JTC, 2015 WL 1280484 at *5, 2015 U.S. Dist. LEXIS 35143 at *11 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). Similarly, "[w]hen controlling weight is not afforded to the opinion of a treating physician (or when assessing a medical opinion from a non-treating source), the ALJ should consider the following factors to determine the proper weight to afford the opinion:
(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.
Burns v. Comm'r of Soc. Sec. , No. 6:16-CV-0820 (GTS), 2017 WL 2334326 at *5, 2017 U.S. Dist. LEXIS 81868 at *14-15 (N.D.N.Y. May 30, 2017).
Plaintiff began treating with PA Gemelli on January 21, 2014. (Dkt. 10 at 303). At that time, PA Gemelli assessed Plaintiff with asthma, weight loss, COPD, anxiety, depression, fatigue, and cortico steroid use. (Id. ). Plaintiff followed-up with PA Gemelli on February 3, 2014. (Id. at 306). PA Gemelli assessed asthma, depression/anxiety, and weight loss, and advised Plaintiff to start taking Chantix to assist him in quitting smoking. (Id. ). On February 11, 2014, Plaintiff visited PA Gemelli and complained of neck and back pain. (Id. at 308). PA Gemelli advised Plaintiff to discuss his pain and "letter of disability", with an orthopedic specialist. (Id. ).
Plaintiff again treated with PA Gemelli on May 5, 2014. (Id. at 312). PA Gemelli assessed cervical spine stenosis and noted that "orthopedic recommends temporary disability 67 percent." (Id. ). At that time, PA Gemelli completed a medical source statement, which consisted of a four-page, check-box form. (Id. at 277-80). For "exertional limitations," PA Gemelli noted that Plaintiff: could frequently lift and/or carry less than 10 pounds; stand and/or walk at least two hours in an eight-hour workday; sit for less than about 6 hours in an eight-hour workday; and that Plaintiff's ability to push and/or pull was limited in his lower extremities. (Id. at 277-78). PA Gemelli also noted that Plaintiff had a 67 percent temporary disability, "per [Syracuse Orthopedic Specialists] [Warren E. Wulff, M.D.]." (Id. at 278). PA Gemelli opined that Plaintiff could never climb ramps, stairs, ladders, ropes, or scaffolds; could occasionally balance, kneel, and crouch; and could never crawl or stoop. (Id. ). Further, PA Gemelli opined that Plaintiff could occasionally reach in all directions, and was unlimited in handling, fingering, and feeling. (Id. at 279). In other words, PA Gemelli opined that Plaintiff was limited to less than sedentary work activity.[3] Dr. Martin co-signed the medical source statement. (Id. at 280). There are no underlying treatment or examination notes from PA Gemelli or Dr. Martin relevant to the assessment of Plaintiff's functional limitations. In fact, PA Gemelli's treatment notes only briefly mention Plaintiff's back and neck pain and, as noted above, there are no treatment notes in the record from *284 Dr. Martin. PA Gemelli's and Dr. Martin's opinions relating to Plaintiff's functional limitations are limited to the above-described form.
Plaintiff followed-up with PA Gemelli on August 26, 2014. (Id. at 313). PA Gemelli advised Plaintiff to continue seeing Dr. Wulff for his back injury. (Id. ). Plaintiff reported pain in his neck and back, and that he "[was] not doing PE for his neck and back right now due to insurance but [was] having nerve blocks." (Id. ). PA Gemelli noted that Plaintiff "exhibit[ed] no edema." (Id. at 314).
The ALJ assigned "limited weight" to the functional limitations assessed by PA Gemelli and Dr. Martin because they were not supported by objective medical evidence in the record. (Id. at 20). Further, the ALJ assigned "limited weight" to the rating that Plaintiff was 67 percent temporarily disabled, because it was not supported by a functional assessment. (Id. ). In explaining why he assigned limited weight to these opinions, the ALJ pointed to several pieces of objective medical evidence contradicting the opinions of PA Gemelli and Dr. Martin, including: treatment notes from Dr. Ganesh; records from Syracuse Orthopedic Specialists, where Plaintiff established care in January 2014, well after the alleged onset date; results of electrodiagnostic testing in April 2014; records from East Hill Family Medical; results of an EMG and nerve conduction study ; and physical therapy records. (Dkt. 10 at 20-21).
The Court has reviewed the medical evidence in the record and finds that the ALJ properly considered the opinion evidence of PA Gemelli and Dr. Martin and that the RFC is supported by substantial evidence. As noted above, PA Gemelli's and Dr. Martin's May 2014 medical source statement was not subject to the treating physician rule and was properly afforded limited weight. The medical source statement is a four-page, check-box form, and is not supported by any underlying treatment records that shed light on Plaintiff's functional capacity. See Torbicki v. Berryhill , No. 17-CV-386(MAT), 2018 WL 3751290 at *4, 2018 U.S. Dist. LEXIS 133834 at *10 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record, including the opinion of a consultative examiner). At Plaintiff's most recent visit with PA Gemelli in August 2014, PA Gemelli did not make note of any objective medical evidence supporting Plaintiff's neck and back complaints; rather, Plaintiff appeared in no distress, and he exhibited no edema. (Dkt. 10 at 314). In other words, the May 2014 medical source statement prepared by PA Gemelli and co-signed by Dr. Martin is not supported by any functional assessment or by PA Gemelli's treatment notes.
Further, PA Gemelli's and Dr. Martin's opinions are not supported by other objective medical evidence in the record. In November 2013, Plaintiff underwent a consultative examination with Kalyani Ganesh, M.D. (Id. at 247-50). At the examination, Plaintiff complained of neck and back pain, but admitted that he had not participated in formal treatment since 2010, and he did not have a treating doctor. (Id. at 247). Plaintiff also reported that he was able to cook, clean, and do laundry once a week, as well as shop once a week. (Id. ). He was able to shower, bathe, and dress daily. (Id. ). In assessing Plaintiff's general appearance, gait, and station, Dr. Ganesh noted:
The claimaint appeared to be in no acute distress. Gait normal. Can walk on heels and toes without difficulty. Squat was *285 50%; effort was poor. Stance normal. Used no assistive devices. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.
(Id. at 248). Further, Dr. Ganesh's musculoskeletal assessment revealed that Plaintiff's:
Cervical spine show[ed] full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. SRL negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. No evidence subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.
(Id. at 249). Dr. Ganesh noted that Plaintiff's prognoses was stable and concluded that "[n]o gross physical limitations are noted to sitting, standing, walking, or the use of upper extremities." (Id. ). The ALJ attributed "some weight" to Dr. Ganesh's opinion based on her "programmatic expertise," but found that other evidence in the record, including the diagnostic imaging and EMG tests in the record, revealed that Plaintiff had some limitations for lifting, carrying, and postural activities. (Id. at 20). It was proper for the ALJ to afford "some weight" to Dr. Ganesh's opinion and only "limited weight" to the opinions of PA Gemelli and Dr. Martin, considering that Dr. Ganesh's opinion was supported by information relevant to Plaintiff's functional assessment. In contrast, both treatment notes from PA Gemelli, as well as the medical source statement from PA Gemelli and Dr. Martin, lacked any meaningful functional assessment relating to Plaintiff's neck and back pain. See Suarez v. Colvin , 102 F.Supp.3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions").
Records from Syracuse Orthopedic Specialists ("SOS") also contradict the opinions of PA Gemelli and Dr. Martin, but support the assessed RFC for light work. Plaintiff began treatment at SOS in January 2014. (Dkt. 10 at 261). At the initial visit with Warren E. Wulff, M.D., Plaintiff reported that "the only care ... he gets is by visiting Emergency Rooms for pain medication." (Id. ). A physical exam revealed some moderate limitations: Plaintiff's gait was antalgic, but he was able to climb onto the examination table without pain; he held his head in flexion, but his spinal alignment revealed normal lordosis ; his cervical and lumbar range of motion was moderately limited; he had moderate tenderness over the right cervical paraspinal area and over the lumbosacral junction; he did not appear to be in acute distress; and his coordination was normal. (Id. at 262). A February 3, 2014 MRI of Plaintiff's cervical spine revealed significant foraminal narrowing from C2-3 through C7-T1, and moderate spinal stenosis at C5-6 and C6-7. (Id. at 264). At an appointment with Helen Harris, PA-C (hereinafter, "PA Harris") at SOS on February 5, 2014, Plaintiff's coordination and gait were normal. (Id. at 267). Plaintiff did not use an assistive device, and he held his head in neutral. (Id. ). PA Harris assessed neck pain and cervical spine stenosis, and reviewed Plaintiff's options for treatment, which included doing nothing, therapy, pain management, and surgery. (Id. ). Plaintiff elected to proceed with pain management. (Id. ). PA Harris also noted a temporary impairment rated at 67 percent. (Id. ).
*286 At a March 2014 visit with SOS, Plaintiff reported that he was in pain. (Id. at 268). A physical examination revealed that Plaintiff had a normal gait, a full, painless range of motion in both hips, and minimally limited lumbar range of motion. (Id. at 270). Plaintiff had mild tenderness over the right lumbar paraspinal area, and a straight leg raise test was negative bilaterally. (Id. ). An April 2014 MRI of the lumbar spine revealed disc protrusions at L4-5 and L5-S1 on the right, and compression of the right S1 nerve root. (Id. at 272). Plaintiff followed-up with SOS in April 2014 following his lumbar MRI. (Id. at 273). A physical examination was normal, aside from a minimally limited lumbar range of motion. (Id. at 275). Under the heading "Plan," it was noted that Plaintiff would continue with conservative treatment. (Id. ).
Plaintiff continued treating with SOS in May 2014, and he appeared for his appointment using a cane. (Id. at 290). Plaintiff's gait was normal, and he was able to climb onto the examination table without assistance. (Id. ). A physical exam was mostly normal, save for a notion that Plaintiff had minimally limited lumbar range of motion, and mild tenderness over the lumbar paraspinal areas. (Id. ). Under "Plan," it was noted that Plaintiff would continue with conservative treatment. (Id. ). Plaintiff's physical examinations at subsequent visits in August 2014 were similar. (Id. at 291-98). Records from August 26, 2014 note that Plaintiff was not able to "walk on [his] heels" or "balance on toes." (Id. at 297). Dr. Wulff noted that "all [Plaintiff] really needs from me today is a disability statement.... I told him I think he can do only sedentary work at this time. He doesn't want to do anything else treatment-wise." (Id. ). Dr. Wulff also noted that "the percentage of temporary impairment is 75%." (Id. ). Dr. Wulff did not issue any formal opinion relating to Plaintiff's functional limitations.
In sum, records from SOS-particularly Plaintiff's physical examinations-were mostly normal, with some minimal limitations. Although Plaintiff's MRI revealed some abnormalities in Plaintiff's lumbar and cervical spine, the ALJ referenced these objective findings and concluded that Plaintiff had greater limitations for lifting, carrying, and postural activities than those assessed by Dr. Ganesh, and adjusted the RFC to include some limitations on those activities. (Id. at 20). In other words, the records from SOS support the ALJ's RFC assessment.
Plaintiff contends that the ALJ failed to discuss certain pieces of evidence, including Plaintiff's paresthesia and numbness, failed to note that Plaintiff appeared to be in moderate pain, and failed to note that Plaintiff used an assistive device to walk. (Dkt. 11-1 at 14). "[A]n ALJ is not required 'to explicitly reconcile every conflicting shred of medical testimony' in [his] findings." Stopa v. Berryhill , No. 3:17-cv-00934 (SRU), 2018 WL 4521938 at *11, 2018 U.S. Dist. LEXIS 161402 at *33 (D. Conn. Sept 21, 2018) (quoting Miles v. Harris , 645 F.2d 122, 124 (2d Cir. 1981) ); Williams v. Comm'r of Soc. Sec. , No. 17-CV-6400P, 2018 WL 4443173 at *7, 2018 U.S. Dist. LEXIS 158943 at *19 (W.D.N.Y. Sept. 18, 2018) (same). The ALJ did not err by failing to discuss each of these facts. In any event, Plaintiff's paresthesia and numbness are in the treatment notes under the section entitled "review of systems" (see, e.g. , Dkt. 10 at 262), and were based on Plaintiff's own complaints, rather than objective medical findings. It is well-settled that subjective complaints of an impairment are insufficient to establish a disability. See Poupore v. Astrue , 566 F.3d 303, 307 (2d Cir. 2009). Rather, Plaintiff's April 2014 EKG for lower extremity pain *287 and numbness, i.e. , the objective medical evidence in the record, was mostly normal. (See Dkt. 10 at 283 (EMG and NCV Findings listed as "[e]valuation of the Right Peroneal Motor nerve showed reduced amplitude.... All remaining nerves ... were within normal limits," and "[n]eedle evaluation of the Right MedGastroc muscle showed slightly increased spontaneous activity and moderately increased polyphasic potentials. The Right LaGastroc muscle showed moderately increased polyphasic potentials. All remaining muscles ... showed no evidence of electrical instability") ).
Further, starting in May 2014, medical records from SOS noted that Plaintiff used a cane to walk, but those same records noted that his gait was normal, and that he had no difficulty getting onto the exam table. (Id. 10 at 290, 293, 297). Similarly, while at some visits to SOS Plaintiff "appear[e]d to be in moderate pain," the records also note that he was not in any acute distress. (Id. at 262, 297). It was well within the discretion of the ALJ to resolve any such conflicts in the medical record. See Veino v. Barnhart , 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").
In sum, the Court has reviewed the medical records from SOS, and finds that the ALJ did not mischaracterize the record, nor did he fail to discuss information that would have had any effect on the assessed RFC. It is clear from the written determination that the ALJ reviewed the entirety of the record, and he cited to specific medical evidence conflicting with the opinions offered by PA Gemelli and Dr. Martin. (See id. at 20-21). Accordingly, the ALJ properly evaluated the opinion evidence in the record. Remand on this basis is not warranted.
B. Failure to Call a Vocational Expert
Plaintiff's second and final argument is that the Step 5 determination is not supported by substantial evidence. (Dkt. 11-1 at 17). Plaintiff contends that the ALJ's RFC did not fully reflect the extent of Plaintiff's limitations, and he therefore erred in not relying on the opinion of a vocational expert in determining that Plaintiff could perform work existing in the national economy. (Id. ).
"An ALJ is required to obtain the testimony of a vocational expert only where a claimant's work capacity is significantly diminished by [his] nonexertional limitations." Fisk v. Colvin , No. 14-CV-931-S, 2017 WL 1159730 at *7, 2017 U.S. Dist. LEXIS 46854 at *17 (W.D.N.Y. Mar. 29, 2017) (citing Bapp v. Bowen , 802 F.2d 601, 603 (2d Cir. 1986) ) (emphasis in original). However, " 'the mere existence of a nonexertional impairment does not automatically require the production of a [vocational expert] nor preclude reliance on the guidelines.' To establish that reference to the grids is inadequate and that the use of a VE is mandatory, nonexertional impairments must 'so narrow[ ] a claimant's possible range of work as to deprive [him] of a meaningful employment opportunity.' " Hofner v. Colvin , No. 1:14-CV-00629 (MAT), 2016 WL 777306 at *3, 2016 U.S. Dist. LEXIS 24479 at *7 (W.D.N.Y. Feb. 29, 2016) (quoting Bapp , 802 F.2d at 602 ).
As discussed above, the ALJ's assessment that Plaintiff is able to perform light work is supported by substantial evidence. The ALJ explained that the additional limitations in the RFC - which included climbing, kneeling, crouching, stooping, balancing, and crawling - had little to no effect on the occupational base for unskilled light work. (Dkt. 10 at 22). The ALJ pointed to guidance contained in SSRs 83-14 and 85-15, providing that limitations *288 on climbing, kneeling, crouching, stooping, balancing, and crawling do not significantly erode the occupational base. (Id. ). SSR 85-15 provides that some limitations in climbing and balancing would "not ordinarily have a significant impact on the broad world of work." See 1985 LEXIS 20 at *17. Further, SSR 85-15 provides that "if a person can stoop occasionally ... the sedentary and light occupational base is virtually intact.... This is also true for crouching." Id. at *18. Finally, SSR 85-15 provides that "limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling." Id.
Accordingly, Plaintiff's limitations for occasionally climbing, kneeling, crouching, stooping, balancing, and crawling do not significantly erode the occupational base for performing light work. See Dowling v. Colvin , CIVIL ACTION NO. 5:14-786, 2015 U.S. Dist. LEXIS 122724, at *48-49 (N.D.N.Y. July 23, 2015) (ALJ properly relied on grids, where the plaintiff's limitations for occasionally climbing and crawling did not significantly erode the remaining occupational base for light work), adopted , 2015 U.S. Dist. LEXIS 122546 (N.D.N.Y. Sept. 15, 2015); see also Dier v. Colvin , No. 13-CV-502S, 2014 WL 2931400 at *4, 2014 U.S. Dist. LEXIS 88332 at *11 (W.D.N.Y. June 22, 2014) (moderate limitation in bending and climbing does not erode occupational base and require consultation with vocational expert, and "[t]he postural limitations reported by the State agency doctors - occasional climbing, balancing, stooping, kneeling, crouching, and crawling - are not inconsistent with light work"). Accordingly, the ALJ did not err by not consulting a vocational expert.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper right hand corner of each document.

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." See 20 C.F.R. §§ 404.1567(a), 416.967(a).